In the Matter of the REINSTATEMENT OF Gerald E. KAMINS, Applicant, to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.

SCBD No. 3400.

Supreme Court of Oklahoma.

March 29, 1988.

K. Lynn Anderson, Gen. Counsel, Oklahoma City, for Oklahoma Bar Ass'n.

Gerald E. Kamins, pro se.

LAVENDER, Justice:

Applicant, Gerald E. Kamins, was admitted to the Oklahoma Bar Association in 1964. In 1977 this Court entered an order suspending Kamins from the practice of law for a period of four months. The genesis of that disciplinary action was Kamins' admission that he had commingled client funds with his own personal funds.

On April 7, 1982 Kamins appeared for deposition regarding a number of formal grievances filed against Kamins by his clients. At this deposition Kamins was informed by the General Counsel for the Oklahoma Bar Association that whether or not Kamins made restitution to his clients in connection with these grievances would not influence the discipline which might be imposed. Kamins questioned whether there was a way to avoid formal prosecution regarding the grievances filed. Kamins was informed that he could avoid prosecution by execution of his resignation

from the Bar pending disciplinary proceedings. During the course of this deposition Kamins also informed counsel for the Bar of his imminent filing of bankruptcy proceedings.

On April 16, 1982 Kamins executed his resignation from the Oklahoma Bar Association pending disciplinary proceedings. The resignation acknowledged the filing of six formal grievances by clients against Kamins. Two of these grievances, filed by Robert Page and Marianne I. McDonald, alleged that Kamins had failed to account for funds properly belonging to the client. In the course of the April 7 deposition Kamins had admitted that a check belonging, at least partially, to Page had been deposited in a personal account belonging to Kamins. The four remaining grievances represented allegations of neglect and/or mishandling of client affairs.

Kamins' resignation was accepted, and, on application of the Bar Association, costs were assessed against Kamins in the sum of $612.50 and ordered paid within ninety days of April 26, 1982.

On March 24, 1987, Kamins filed a petition for reinstatement to membership in the Oklahoma Bar Association and to the Roll of Attorneys. This application was referred to the Professional Responsibility Tribunal and a trial panel was appointed to hold a hearing on the matter.[1] Because Kamins, in his testimony in the deposition of April 7, 1982 had attributed problems in the conduct of his affairs as an attorney to his alcoholism, General Counsel for the Oklahoma Bar Association requested, prior to the hearing, that Kamins be examined by a mental health professional to assess his competency to practice law. Kamins was subsequently examined by a psychiatrist appointed by the Professional Responsibility Tribunal.

Evidentiary hearings were held on Kamins' application on June 24 and September 10, 1987. In support of his application Kamins initially presented seven witnesses,

including himself. These witnesses testified as to Kamins legal career prior to the problems which culminated in his resignation. Kamins' witnesses testified that he had offered distinguished service to the Bar in his early career. Other of those witnesses testified as to Kamins' dedication to the cause of Alcoholics Anonymous and his service in that organization since the date he had stopped drinking in December 1979. Kamins also offered the testimony of an expert on alcoholism who testified that Kamins' history provided an excellent basis for a prognosis that alcoholism would not affect Kamins' future performance as an attorney. All of these witnesses concluded that, to the best of their knowledge, Kamins was now ready for readmission to the Bar.

Of special interest, however, is the testimony of Kamins himself. He testified regarding his activities since his resignation by which he had maintained familiarity with the legal profession and with the law. He also described the problems which gave rise to his resignation. Kamins attributed his actions at that period in his life to the aftermath of alcoholism, acknowledging that the actual incidents involved took place one to two years following the actual cessation of Kamins' drinking. Kamins admitted that he had not made restitution as to the claims of clients against him, but stated that the Counsel for the Bar had advised him at the time of his resignation that restitution did not matter. He stated his willingness to make restitution now "if that's an issue," regarding his reinstatement. Kamins also admitted filing a petition for bankruptcy dated the same date as the execution of his resignation. This petition listed as unsecured creditors three of the clients who had filed the grievances against Kamins listed in the resignation and a fourth who subsequently filed a grievance based on alleged mishandling of client's funds and failure to account. Kamins admitted that he discharged these debts through bankruptcy but that one had

1. 5 O.S.1981, Ch. 1, App. 1–A, Rule 11.3.

been made the subject of a challenge as to dischargeability since it was based on fraud. [See 11 U.S.C. § 523(a)(4) ]. This debt was stipulated to by Kamins as non-dischargeable at a lowered amount. Kamins, however, acknowledged that the debt had not yet been paid. Kamins attributed his failure to attempt to make restitution, beyond the advice of others, to the low levels of income he had been able to sustain since his resignation.

When questioned as to the matters reflected in his resignation, Kamins attempted to portray them as being of little substance and as excuseable actions. Just as his failure to make restitution was attributed to lack of funds, Kamins stated that his failure to pay the costs ordered paid in connection with his resignation was also due to lack of funds. Kamins was also questioned about his failure to comply with Rule 9.1.[2] He stated that he had been in substantial compliance with the rule by giving actual notice of his resignation to his clients although he acknowledged that he had not been in full compliance with the rule since he had not filed the required affidavit.

Counsel for the Bar Association actively opposed Kamins' reinstatement and presented testimony relevant to that opposition. Three witnesses were presented who, as former clients of Kamins, testified as to actions of Kamins which formed the basis of their complaints to the Bar which were separate from the six counts acknowledged in Kamins' resignation. The first, Brooks Bearden, testified that Kamins had represented him in a claim against an insurance company. The claim had been settled for $1,721.50 in March of 1982. Kamins brought the draft for this amount to Bearden and had him endorse it. Kamins did not turn the draft over to Bearden but kept possession and cashed it on his own behalf. On April 2, 1982 Kamins left a cashiers check for $1,000 in Bearden's mail box with a note that it was a "loan" because that draft had not yet been cleared. Bearden subsequently determined that the draft had been cashed at least one week prior to April 2. In spite of efforts by Bearden, Kamins never accounted for the remaining $721.50. Bearden was subsequently listed as an unsecured creditor on Kamins' bankruptcy petition filed April 16, 1982. Bearden also testified that Kamins had never contacted him regarding the fact that Kamins had resigned from the Bar.

Also testifying as former clients were Mary Geenen and her son Joseph E. Geenen, Jr. Mrs. Geenen contacted Kamins in 1980 concerning the death of her husband who had been killed in an on the job accident. Kamins agreed to represent Mrs. Geenen and her children in a workers' compensation action for ten percent of the recovery and also entered into a contingency fee agreement to represent her in a separate wrongful death action.[3] The workers' compensation claim was settled for $70,000. The compensation court approved this settlement and set Kamins' fee as $5,000. On July 8, 1980, Mrs. Geenen received the bulk of the settlement checks. Although Kamins had previously received his $5,000 fee directly from the insurance carrier, Kamins, on this date, demanded payment of his $7,000 "fee" plus an advance of $2,500 to do research on the wrongful death case. On September 18, 1980 Kamins delivered a check to Mrs. Geenen dated payable on September 25, 1980 under the pretense that this was a refund of a fee overpayment. Kamins' attempted wrongful death action was dismissed in district court for lack of jurisdiction and an appeal from that dismissal was also dismissed for lack of jurisdiction on March 15, 1982. On April 14, 1982 Kamins sent a letter to Mrs. Geenen asking her to agree to a dismissal of the wrongful death action. Mrs. Geenen refused to sign

**2.** 5 O.S.1981, Ch. 1, App. 1–A, Rule 9.1 provides for notice to clients of a lawyer's resignation and requires that an affidavit be filed with the Bar and with the Court stating compliance.

**3.** This agreement specifically provided that all costs would be paid by Kamins if no damages were recovered.

and demanded the refund of her $2500. Neither the $2500 or the $2000 payment of fees above the approved fee for the compensation case were ever repaid in whole or in part to Mrs. Geenen and no accounting was ever offered. Mrs. Geenen also testified that Kamins had never contacted her regarding his resignation from the Bar.

Counsel for the Bar also presented the testimony of the psychiatrist who had examined Kamins on appointment by the Professional Responsibility Tribunal. The psychiatrist testified that Kamins was administered a battery of psychological tests which he had reviewed and that he had also personally interviewed Kamins. He gave the opinion that Kamins was an anti-social personality, that he had no remorse for his past actions and would probably repeat his past behavior patterns if given the opportunity. In his opinion Kamins blamed others for his problems and overlooked the importance of the past events connected with his resignation or dismissed them as unimportant because of his concern over "greater issues." The psychiatrist testified that a characteristic of an anti-social personality was the ability to intellectualize and rationalize this behavior to make it appear acceptable. He also testified that alcoholism may be associated with an anti-social personality.

In the September 10, 1987 hearing Kamins presented testimony of another expert witness in rebuttal to the testimony of the psychiatrist appointed by the Tribunal. This witness testified that in his opinion the history of Kamins fit his understanding of the pattern of alcoholism and that his behavior could be attributed to that disease. He did not agree with the use of the term "anti-social personality."

The other witness on rebuttal offered testimony relative to a matter concerning Brooks Bearden that did not concern the appropriation of funds previously discussed. In this hearing, however, Kamins again testified. In this hearing Kamins had counsel different from his representation in the prior hearing. Under examination by this counsel Kamins admitted the wrongfulness of his actions concerning the matters reflected in his resignation and in the dealings with Bearden and Mrs. Geenen. However, despite the guiding questions of counsel, Kamins continued to offer explanations to rationalize his past actions. At this hearing Kamins also offered a check in restitution for the amount owed Robert Page and stated this was what he wanted to do in 1982 but was advised not to by Counsel for the Bar.

On October 12, 1987 the trial panel of the Professional Responsibility Tribunal filed its findings of fact and conclusions of law pursuant to 5 O.S.1981, Ch. 1, App. 1–A, Rule 11.5. As findings of fact the panel found, among other points, that Kamins had not paid the costs of the previous resignation proceeding; that Kamins had not complied with Rule 9.1 of the Rules Governing Disciplinary Proceedings;[4] that Kamins had discharged debts owed to clients through voluntary bankruptcy proceedings; that he had been previously suspended; that he had committed fraud against several clients, including Mrs. Geenen; that Kamins presently suffers from personality defects and lacks compassion for the victims of his actions; that Kamins' former alcoholism does not explain his current mental condition although Kamins uses alcoholism to rationalize his past behavior. The trial panel concluded that Kamins had not engaged in the unauthorized practice of law during his resignation, but also concluded that Kamins had not presented proof to establish his fitness to be readmitted to the Bar. The panel found that the psychiatric testimony, in connection with Kamins' own testimony, supported the conclusion that Kamins lacked the moral and ethical judgment required of a member of the Bar.

Both Kamins and counsel for the Bar Association have subsequently filed briefs in this Court in response to the trial panel's findings of facts and conclusions of law. Counsel for the Bar Association argues the

4. Supra, note 2.

correctness of those findings. Kamins argues that the evidence presented regarding his reinstatement establishes that he is now of good moral character, that his past problems were the product of alcoholism, that he has now overcome alcoholism and there are excellent prospects that he will not relapse. He states that the evidence is sufficient to support reinstatement on a conditional basis, i.e. that he be subjected to a course of monitored behavior over a period of at least five years. Kamins, in briefs, disputes whether restitution is appropriate as to any of the matters testified to in the hearing, with the exception of the amount due Robert Page which was paid in the course of the September 10 hearing.

## I.

■■■ In reinstatement proceedings, as in other bar disciplinary matters, this Court does not sit in review of the trial panel's recommendations but instead sits in exercise of its exclusive original jurisdiction in matters involving the licensing of members of the Bar.[5] Although entitled to great weight, the recommendations of the trial panel are merely advisory in nature.[6] The ultimate decision regarding the reinstatement of Kamins rests with this Court.[7]

■■ The burden on one seeking reinstatement is a heavy one, as stated in Rule 11.4:[8]

An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstate-

ment. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules.

The burden on the applicant is the same whether the applicant has been disbarred, or, as in this case, resigned pending disciplinary proceedings.[9]

The duty of this Court in evaluating the application for reinstatement is a grave one. We find the nature of the considerations incumbent on this Court to be appropriately reflected in this statement from the Supreme Court of Kansas in *State v. Russo:*[10]

It is the duty of the Supreme Court to preserve the high ethical and moral standards required before a person is entitled to enjoy the privilege to practice law. When one first petitions for admission to the bar, he must meet the qualifications required of a member of the profession. When a former attorney seeks reinstatement, he must meet an even greater burden than when he was originally admitted and must overcome the prior adverse conclusions of the court as to his fitness to practice law. *Matter of Keenan*, 313

---

5. *State ex rel. Okla. Bar Asso. v. Samara,* 683 P.2d 979 (Okla.1984); *State ex rel. Okla. Bar Asso. v. Raskin,* 642 P.2d 262 (Okla.1982).

6. *Application of Sharpe,* 499 P.2d 406 (Okla. 1972).

7. *Application of Daniel,* 315 P.2d 789 (Okla. 1957).

8. 5 O.S.1981, Ch. 1, App. 1–A.

9. *Application of Balch,* 506 P.2d 1384 (Okla. 1973).

10. 230 Kan. 5, 630 P.2d 711, 714 (1981).

Mass. 186, 221, 47 N.E.2d 12 (1943); *State, ex rel. Sorensen v. Goldman,* 182 Neb. 126, 153 N.W.2d 451 (1967). Although it may be said that Mr. Russo "voluntarily" surrendered his certificate to practice law, the same was only done when it became apparent that disbarment was inevitable and such surrender constitutes a voluntary disbarment. The decision whether reinstatement of an attorney is justified and will be granted rests exclusively within the discretion of the court, *In re Daniel,* 315 P.2d 789 (Okla.1957), 70 A.L.R.2d 265; *In re Bennethum,* 278 A.2d 831 (Del.1971), and the public interest in maintaining the integrity of the administration of justice is paramount in making such a determination.

A review of the cases concerning reinstatement to the practice of law discloses several factors which have been traditionally considered by the courts. These factors include: (1) the present moral fitness of the petitioner, (2) the demonstrated consciousness of the wrongful conduct and disrepute which the conduct has brought the profession, (3) the extent of petitioner's rehabilitation, (4) seriousness of the original misconduct, (5) conduct subsequent to discipline and (6) the time which has elapsed since the original discipline. See 70 A.L.R.2d 268. Additional factors include (1) the petitioner's character, maturity, and experience at the time of disbarment and (2) the petitioner's present competence in legal skills. *In re Brown,* [166 W.Va. 226], 273 S.E.2d 567 (W.Va.1980). (original emphasis deleted)

It is the duty of this Court to review the evidence in relation to these factors and to make a determination based on the Court's primary duty of safeguarding the interests of the public, the courts and the legal profession.[11] In doing so the Court balances the interest of the applicant against the fact that the very nature of the profession places an attorney in a position where an unprincipled person may do tremendous harm to the public and to his clients.[12] It is because of the great potential for harm that the burden on one seeking reinstatement is so great. Where one has shown disregard for the interests which this Court must uphold, so as to necessitate disciplinary proceedings in the first instance, his showing on each of the factors to be considered on reinstatement indeed must be, as stated in Rule 11.4, *clear and convincing.*

## II.

■ Our review of the evidence presented in the record before this Court convinces us that Kamins has clearly failed to meet his burden of proof that his future conduct will conform to the high standards required of a member of the Bar. Kamins has: 1) not demonstrated a present moral fitness to practice law; 2) not demonstrated a consciousness of the wrongful nature of his past conduct and the consequences of those actions; and 3) not demonstrated a rehabilitation as to the lack of moral and ethical judgment which led to his behavior.

Although we must applaud Kamins for his act of will in overcoming his problems of drug and alcohol abuse, we do not agree with his assertion that this was the stem of all his problems and that his conquest now proves him to be worthy of reinstatement. A review of the deposition given by Kamins in connection with his resignation in April 1982 in comparison with the testimony which he gave in the course of the hearings before the trial panel reflects no change in Kamins' attitude toward his actions in flagrant disregard of his clients' interests. The only testimony in which Kamins even grudgingly admitted the opprobrious nature of his past actions was obtained through a course of leading questions propounded by his own counsel during the September 10 hearing.

---

**11.** *State ex rel. Okla. Bar Asso. v. Raskin,* supra note 5; *Matter of Evinger,* 604 P.2d 844 (Okla. 1979).

**12.** *In re Raimondi and Dippel,* 285 Md. 607, 403 A.2d 1234 (1979).

We find this testimony and the testimony concerning his rationalizations for failure to even attempt to make restitution of funds properly due his former clients to fully support the conclusions of the psychiatric witness appointed by the Professional Responsibility Tribunal. In this testimony Kamins has consistently sought to place the blame for his actions on others, such as Counsel for the Bar for "advising him not to make restitution," or on his own alcoholism. Kamins indicates a continuing dismissal of the gravity of his actions by arguing in his briefs to this Court whether restitution to his clients is even appropriate.[13] This testimony establishes the present moral condition of Kamins. We find that condition to be unworthy of reinstatement to membership in the Oklahoma Bar Association.

### III.

The Petition for Reinstatement of Gerald E. Kamins to Membership in the Oklahoma Bar Association and to the Roll of Attorneys is hereby *DENIED*. On application of the Oklahoma Bar Association costs are assessed against Kamins in the sum of $4,547.39 including costs assessed by order of April 26, 1982. The costs are to be paid by order of this Court within thirty (30) days of the date of mandate of this opinion.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, OPALA, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

---

**13.** While it is true that this Court, in a matter in which it is shown that an attorney has misappropriated or wrongfully withheld funds properly belonging to his client, will not be deterred from imposing discipline by the reimbursement of those funds to the client, *State ex rel. Okla. Bar Asso. v. Moore,* 741 P.2d 445 (Okla.1987); *State ex rel. Okla. Bar Asso. v. Raskin,* supra, note 5, this Court will be concerned about the moral character of an attorney, who seeks reinstatement to the practice of law, who has not, during the period of discipline, made full restitution of all funds misappropriated or wrongfully withheld from the client, Rule 11.4, supra, note 8. The failure of Kamins in this regard is demonstrated by the record.