In the Matter of the Reinstatement of Joseph Edward McCONNEL to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.

SCBD No. 3875.

Supreme Court of Oklahoma.

Oct. 4, 1994.

As Modified on Limited Grant of Rehearing Dec. 5, 1994.

John E. Douglas, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Bill James, Yukon, and Julie K. Simmons, Horning, Johnson, Grove, Moore, Hulett & Thompson, Oklahoma City, for petitioner.

SUMMERS, Justice:

Joseph Edward McConnel was admitted to the Oklahoma Bar Association in 1968. He

practiced law in Oklahoma City until 1985 when he pled guilty to two misdemeanor counts of using information for a purpose other than the preparation of tax forms. These guilty pleas were the result of a lengthy investigation by the Internal Revenue Service, and apparently represented only a portion of the violations charged against McConnel. According to Petitioner the actions resulting in these pleas arose out of transactions with his lower income clients. These clients, which increased to about fifty a year, had approached him for an advance on their tax refunds. He would have them sign a power of attorney and, in some instances, a blank tax return. He would give them sixty percent of their estimated refund, take forty percent as his fee and have the refund mailed to himself. When the tax refund check arrived, he would endorse the check. These transactions continued for a period of years. He was sentenced to six months in the federal penitentiary and was assessed substantial fines. The total amount of interest, penalties and fines assessed by the IRS was $150,000.00. Petitioner was able to negotiate the amount down to approximately $50,000.00.

As a result of these misdemeanor convictions, Petitioner was suspended from the practice of law for four years. This Court, in the order of suspension, noted the two misdemeanor convictions and stated that Petitioner's conduct was in disregard of the integrity owed by an attorney to his clients.[1]

Petitioner filed his petition for reinstatement on December 16, 1992, pursuant to Rule 11.1 of the Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A. The Professional Responsibility Tribunal held a hearing. At the hearing Petitioner presented testimony from several colleagues. They testified that they believed Petitioner regretted his actions and would be an asset to the Bar.

Petitioner testified and explained several incidents which General Counsel for the Bar contended made him unfit for reinstatement. The first incident was one arising out of a

perjury charge filed against Petitioner in Arkansas twenty years ago. The charge is still pending, and an Arkansas prosecutor testified that the only reason it had not been pursued was because an Oklahoma court refused extradition. The prosecutor stated that if Petitioner came back to Arkansas he would be arrested and tried.

Petitioner testified that he thought the charge had been dropped because of Oklahoma's refusal to agree to extradition. The order of the LeFlore County District Court, entered in 1973, granted a writ of habeas corpus, and held that the Arkansas indictment did not allege a prosecutable offense. That order was not appealed. The Bar Association points out that even though the offense is quite dated, it shows a lack of concern for the law by Petitioner. Petitioner responds that he made no further attempts to clear his name because he considered the matter ended when he was granted the writ of habeas corpus.

A second incident brought to light by the General Counsel Bar Association is much more recent and of greater concern. In 1989 Petitioner was traveling through Arizona when he was pulled over by two police officers. He was arrested and a semi-automatic weapon was found in his vehicle. The weapon had been reported as stolen. He was charged with theft of a weapon, but was never convicted and the charges were ultimately dropped.

The troubling aspect of the charge is that Petitioner told the police officers that he was a criminal lawyer. He also represented to the deputy prosecutor that he was a member of the Bar. The prosecutor testified that because Petitioner stated he was a member of the Bar, the prosecutor attempted to work out a plea bargain wherein Petitioner would not have to return to Arizona. Generally, Arizona requires that the person entering a plea be present. The deputy prosecutor, in an attempt to have this requirement waived, typed a paragraph on the bottom of the plea agreement and sent it to Petitioner for his signature. The paragraph stated:

---

1. This Court first disbarred Petitioner. On rehearing, the discipline was lessened to four years suspension.

I Joseph E. McConnel, am an attorney, licensed to practice in the State of *Oklahoma;* I hereby knowingly, voluntarily and intelligently waive my personal appearance at any initial appearance, arraignment or change of plea proceedings, being familiar with the rights I am thereby waiving.

Signed: *Joseph E. McConnel* Dated: *Nov. 20, 1989*

The underlined portions were filled in by Petitioner and signed. When the plea bargain was refused by the judge, the prosecutor dropped the charges as a courtesy to a fellow attorney. Petitioner concedes that he told the prosecutor he was a member of the Bar. He contends that his statements were true; he was a member of the Bar, but his privileges had just been suspended. Petitioner said he made this statement in order to clear the matter up quickly and not have to return to Arizona. The prosecutor testified he was certain that Petitioner did not tell him he was suspended.

In its report, the Professional Responsibility Tribunal also noted that the IRS investigator was called as a witness. However, Petitioner refused to sign a waiver to allow the investigator to give details with regard to the felony charges and the subsequent audit of his personal finances. The investigator was permitted only to testify that in exchange for a plea, the charges were reduced to those to which Petitioner pled guilty. The investigator implied that many felony charges were dropped. The PRT found this important because the Petitioner has the burden of showing that he should be reinstated, and without the investigator's testimony, the only evidence submitted on that subject was the testimony of Petitioner.

The PRT recommended to this Court that reinstatement be denied. It held that Petitioner had failed to meet his burden of showing he possesses sufficient high moral character to be reinstated. Underlying its holding was the panel's belief that Petitioner did not seem to appreciate the gravity of his actions. At the hearing he stated that he realized that there was "an appearance" of wrongdoing. The PRT also noted Petitioner's intentional misleading of the Arizona prosecutor to secure advantage in the criminal charge. The PRT next pointed out that Petitioner has $50,000.00 owing to the IRS, and had not reached an arrangement to pay this past due amount. Lastly, the PRT pointed out that Petitioner has a duty of absolute candor in these proceedings, and his refusal to permit the tax investigator to testify raised doubt as to his openness.

In his brief to this Court, Petitioner raises several issues. First, he urges that the twenty-year-old perjury charge should not be considered by this Court, as it is too old to be of any relevance. Next, he urges it was error for the PRT to admit in evidence the unfiled plea agreement. Third, he claims that it was error for the PRT to consider the fact that he refused to sign a release to permit the IRS investigator to testify. He urges that this testimony would have been hearsay, and thus he validly refused to sign the release. Finally, he claims he has demonstrated consciousness of his wrongful conduct, and that other attorneys have gained reinstatement after having committed more serious offenses. We address each of these in turn.

In reinstatement proceedings, this Court sits in exercise of its original jurisdiction. *Matter of Reinstatement of Thompson,* 864 P.2d 823 (Okla.1993); *Matter of Reinstatement of Kamins,* 752 P.2d 1125, 1129 (Okla. 1988); *State ex rel. Okla. Bar Ass'n. v. Samara,* 683 P.2d 979 (Okla.1984). Rule 11.5 requires the PRT to make findings as to (1) the good moral character of the applicant, (2) whether the applicant engaged in the unauthorized practice of law and (3) whether the applicant possesses the competency and learning in the law required for admission. *See also Thompson,* 864 P.2d at 826; *Matter of Reinstatement of Floyd,* 775 P.2d 815 (Okla.1989). In the present case, the PRT found that Petitioner possessed sufficient legal knowledge and has not engaged in the unauthorized practice of law. However, the PRT decided that Petitioner had not met his burden with regard to the requirement of good moral character.

As stated in Rule 11.4, 5 O.S.1991, Ch. 1, App. 1–A, the burden on the applicant in a reinstatement proceeding is a heavy one:

An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications that one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injury party will be taken into consideration by the Trial Panel. Further, if applicable the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules.

Petitioner's burden of proof for reinstatement is by clear and convincing evidence, and reinstatement is not automatic even where no contrary evidence is presented. *Matter of Reinstatement of Hanlon,* 865 P.2d 1228, 1230 (Okla.1993); *Matter of Reinstatement of Cantrell,* 785 P.2d 312, 313 (Okla.1989). Our review of the evidence is *de novo. Kamins,* 752 P.2d at 1129.

### THE EVIDENTIARY ISSUES

Before we consider whether Petitioner has met the requirements for reinstatement, we must address Petitioner's arguments as to the admissibility of portions of the evidence. Title 5 O.S.1991. Ch. 1, App. 1–A, Rule 6.12, states "[s]o far as practicable, the disciplinary proceedings and the reception of evidence shall be governed by the rules in civil proceedings...."

### A.

■ The first evidentiary issue raised by Petitioner is whether the plea negotiations and surrounding statements were admissible. Title 12 O.S.1991 § 2410 states:

A. Except as otherwise provided in this section evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

1. a plea of guilty which was later withdrawn;

2. a plea of nolo contendere;

3. any statement made in the course of any proceedings under state procedure regarding either of the foregoing pleas; or

4. *any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty which if later withdrawn.*

B. However, such a statement is admissible in:

1. any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement, as a matter of justice, should be considered contemporaneously with it; or

2. a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel. (Emphasis added)

Petitioner urges that this section precludes admission of the unfiled plea agreement and of the testimony by the prosecuting attorney regarding the surrounding circumstances. General Counsel for the Bar asserts that this evidence is admissible as not falling within the intended protections of Section 2410.

Section 2410, substantially similar to Federal Rule of Evidence 410, was intended to prevent the use of certain pleas or plea discussions to gain advantage in a subsequent civil or criminal proceeding. The section is intended to promote the disposition for criminal cases by compromise. Whinery, *Oklahoma Evidence: Guide to the Oklahoma Evidence Code,* § 2410 comments. The statute seeks to facilitate pleas by encouraging negotiation without the threat that the comments made in the negotiation will be used to later prosecute the defendant. *See* Blakey, *An Introduction to the Oklahoma Evidence*

*Code: Relevancy, Competency, Privileges, Witnesses, Opinion and Expert Witnesses,* 14 Tulsa L.J. 22 (1978).

When a party attempts to introduce an unconsummated plea agreement to show guilt, courts generally have held the plea and its negotiations inadmissible.[2] However, in an instance where plea negotiations were introduced in a disciplinary proceeding by a bar association, at least one court ·has held the evidence admissible. *Turton v. State Bar of Texas,* 775 S.W.2d 712 (Tex.App.1989). There the attorney entered a plea of *nolo contendere* to aggravated assault. Because of the conviction, he was suspended from the Bar. He appealed his suspension, stating that evidence of plea of *nolo contendere* was not admissible under Texas Rule of Evidence 410.[3] The Texas court disagreed, holding that without admission of the plea agreement, the duty of discipline of the Bar Association would be meaningless. The court specifically stated "[w]e find Rule 410 does not require exclusion of the order from evidence in this disciplinary action against an attorney." *Id.* at 15.

In the present case, introduction of the plea negotiation did not thwart the worthy purpose of Section 2410 by discouraging compromise in a criminal proceeding. It was not used to show the Petitioner's guilt with regard to the crime charged. Instead, it is important only insofar as it shows that Petitioner intentionally misrepresented himself as an active member of the Oklahoma Bar Association to the prosecuting attorney in order to gain a benefit. Under these limited circumstances, we believe that the unfiled plea agreement and the surrounding statements were admissible. We hold that the admission of the plea negotiation was relevant, not to show what the Petitioner was willing to plead to, but to demonstrate the misrepresentation to a member of a neighboring Bar. Rule 6.12, by its language "[s]o

far as practicable" contemplates that some instances presented by ·the nature of a disciplinary proceeding will necessitate the admission of evidence which might not follow evidentiary rules in an ordinary civil or criminal proceeding. The purpose behind Section 2410 is not disturbed by this holding, and the holding affirms the duty of the bar association to investigate fully and report on the attorney's behavior. *See* 5 O.S.1991, Ch. 1, App. 1–A, Rule 11.1, 11.3, 11.4 and 11.5.

**B.**

■ Next, Petitioner objects to the PRT's consideration of his refusal to sign a waiver to permit a more thorough review of the facts surrounding his felony convictions. Petitioner claims that he refused to sign the waiver presented by the IRS investigator because the testimony of the investigator would have been hearsay and thus inadmissible. This argument is without merit.

The waiver would have permitted the investigator to testify as to his findings. If indeed the testimony was hearsay, Petitioner could have made a contemporaneous specific objection at the hearing. *See Davis v. Town of Cashion,* 562 P.2d 854 (Okla.1977). Or Petitioner could have complied with the request for a waiver prior to the hearing, and if he anticipated that inadmissible hearsay would be offered, filed a motion in limine to prevent its admission into evidence. *Middlebrook v. Imler, Tenny & Kugler M.D.'s Inc.,* 713 P.2d 572, 579 (Okla.1985).

It is the burden of the applicant seeking readmission to show that his moral standards rise to the level required to be a member of the Bar. A full disclosure of facts is necessary for the PRT to make a knowing decision. We find no error in PRT's consideration of Petitioner's refusal to sign a waiver to permit more disclosure of the circumstances surrounding his convictions.

---

**2.** *See Bell v. State,* 622 N.E.2d 450 (Ind.1993) (confession which occurred during plea negotiations was inadmissible); *State v. Woodsum,* 137 N.H. 198, 624 A.2d 1342 (1993) (lenient sentence offered in the plea was not admissible, even though its admission was sought by the defendant, in a subsequent criminal prosecution); *State v. Pearson,* 818 P.2d 581 (Utah 1991) (plea discussions which did not result in a plea were

not admissible in a criminal prosecution); *Landrum v. State,* 430 So.2d 549 (Fla.1983) (it was not harmless error to admit evidence of plea discussions in a later criminal trial).

**3.** The Texas rule is substantially similar to Oklahoma's Rule 410.

## C.

We finally turn to the twenty-year-old perjury charge. Petitioner asserts that this evidence is too old to be relevant. Title 12 O.S.1991 § 2402 states that relevant evidence is generally admissible. However, § 2403 recognizes that relevant evidence may be excluded if its probative value is outweighed by that "danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence or unfair and harmful surprise." Petitioner does not argue that the evidence is inadmissible under Section 2403, but instead relies solely on the idea that the evidence is not relevant. The Bar Association argues that the mere existence of the old charge, remaining undisposed of, has some bearing on Petitioner's attitude toward the legal system.

In our *de novo* review of the case we conclude that the evidence produced at the hearing, separate and apart from the twenty year old pending charge, compels the result we ultimately reach. Thus it is not necessary to further analyze the admissibility of that proffered evidence. We exclude it completely from our consideration.

## *REINSTATEMENT REQUIREMENTS*

■ We now turn to the requirements under Rule 11.4 and the factors enunciated in *Matter of Reinstatement of Kamins*, 752 P.2d at 1130. Therein we set forth eight factors to consider when reviewing a petition for reinstatement: (1) the present moral fitness of the applicant, (2) the demonstrated consciousness of the wrongful conduct and disrepute which the conduct has brought the profession, (3) the extent of the applicant's rehabilitation, (4) seriousness of the original misconduct, (5) conduct subsequent to discipline, (6) the time which has elapsed since the original discipline, (7) the applicant's character, maturity and experience at the time of disbarment, and (8) the applicant's present competence in legal skills. *See also· Matter of Reinstatement of Thompson*, 864 P.2d at 826; *Matter of Reinstatement of Moss*, 848 P.2d 564, 565 (Okla.1993).

Keeping in mind that Petitioner must meet his burden by clear and convincing evidence, *see Hanlon*, 865 P.2d at 1230, we find that Petitioner has not shown that he has the present moral fitness to be reinstated into the Bar. As for Petitioner's recognition of his wrongful behavior, the hearing transcript reveals that Petitioner feels he was caught by a technicality in the law. While he acknowledges that his actions of keeping forty percent of his client's tax refunds gives the "appearance" of wrongdoing, he urges that he was doing his clients a service by providing them money when they needed it. He does not address the illegality of having the clients sign blank tax forms.

The seriousness of the original conduct cannot be determined by this Court. Although it is true that Petitioner eventually pled guilty to two misdemeanor charges, it appears that this was the result of negotiation, and that the IRS had investigated Petitioner for receiving the refunds of fifty to sixty clients over a period of years. We cannot determine the full seriousness of his behavior because Petitioner refused to sign a waiver to permit the investigating IRS agent to testify as to his findings in the investigation. We have in the record only Petitioner's version of events.

Subsequent to his suspension Petitioner has lived in several places and has attempted several business ventures. He was arrested in Arizona for possession of a stolen weapon. At one point, he indicated that he received the weapon as a fee from a client. However, at the hearing he said he could not remember where he got the weapon. From this occasion arose the incident where Petitioner represented himself as a practicing attorney to law enforcement authorities. The record also shows that Petitioner owes $50,000.00 to the IRS as a result of the investigation leading to his suspension. He has made no payments and has not arranged a payment plan with IRS.

Petitioner was suspended for four years in 1985, and did not seek reinstatement until December 16, 1992. He had been practicing law for almost seventeen years when he was suspended. He testified that since his suspension he has kept current with reading the

Oklahoma Bar Journal. He has also attended seminars involving litigation for breast implant recipients while working for an attorney. While working for another attorney he did some legal research and investigation of client's cases.

We agree with the PRT's findings that he did not engage in the practice of law while suspended, and that he has remained competent in the law. However, we find that he has not met his heavy burden of showing that he possesses the high moral character required for reinstatement. Petitioner's request for reinstatement is denied.

On application by the Oklahoma Bar Association, costs totalling $3687.19 are assessed against Petitioner. Title 5 O.S.1991, Ch. 1, App. 1–A, Rule 11.1(c). The costs are to be paid within thirty (30) days of the date the opinion becomes final.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, OPALA, ALMA WILSON, KAUGER and WATT, JJ., concur.

HARGRAVE, J., dissents.