
		
				IN THE MATTER OF THE REINSTATEMENT OF ARNETT2022 OK 87Case Number: SCBD-7235Decided: 11/08/2022THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 87, __ P.3d __

				
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN THE MATTER OF THE REINSTATEMENT OF: EMMA BARLIE ARNETT, TO MEMBERSHIP IN THE OKLAHOMA BAR ASSOCIATION AND TO THE ROLL OF ATTORNEYS
ORIGINAL PROCEEDING FOR RULE 11 REINSTATEMENT
¶0 Petitioner Emma Barlie Arnett filed a petition for reinstatement to membership in the Oklahoma Bar Association. The Oklahoma Bar Association does not oppose her reinstatement, and the Trial Panel of the Professional Responsibility Tribunal recommended reinstatement. After our de novo review, we hold that Petitioner has met the requirements for reinstatement to the Oklahoma Bar Association. 
PETITION FOR REINSTATEMENT IS GRANTED;
PETITIONER IS ORDERED TO PAY COSTS.
Sheila J. Naifeh, Tulsa, Oklahoma, for Petitioner.
Gina Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Respondent.
Winchester, J. 
¶1 Petitioner Emma Barlie Arnett (Arnett) seeks reinstatement as a member of the Oklahoma Bar Association (OBA) pursuant to Rule 11, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2021 ch. 1, app. 1-A. We hold the record shows by clear and convincing evidence that Arnett has met the prerequisites for reinstatement.
FACTS AND PROCEDURAL HISTORY
¶2 Arnett graduated from the University of Tulsa College of Law in May 2003, and she was admitted to the OBA on September 30, 2003. She began working in private practice before becoming a lawyer for the Oklahoma Department of Human Services (DHS).
¶3 On August 27, 2017, Arnett was at a party where she consumed several glasses of wine. While driving home that night, Arnett struck Christopher Brown (Brown)--a pedestrian in the roadway--with her vehicle. Emergency Medical Technicians transported Brown to the hospital, where he died several hours later. Arnett was taken to the hospital for a blood alcohol test, which showed her blood alcohol content was 0.142.
¶4 On December 1, 2017, Arnett was charged with the felony crime of Manslaughter in the First Degree, to which she pled guilty. On July 23, 2018, the district court sentenced Arnett to four years in custody and eight years suspended.
¶5 On September 18, 2018, this Court immediately suspended Arnett from the practice of law as the result of her guilty plea to the criminal charges. On October 7, 2019, this Court entered a final order of discipline, suspending Arnett from the practice of law for two years and one day or upon her release from incarceration, whichever is longer. The Court also ordered Arnett to pay costs in the amount of $4,077.65. See State ex rel. Okla. Bar Ass'n v. Arnett, , . Arnett complied with Rule 9.1 of the RGDP by filing her affidavit on September 27, 2018.
¶6 On December 13, 2021, Arnett was released from the Dr. Eddie Warrior Correctional Center. She remains on probation. However, Arnett's probation officer terminated her "active probation" and she does not have to meet monthly with her officer.
¶7 On March 24, 2022, Arnett filed a Petition for Reinstatement with this Court. On June 3, 2022, the Professional Responsibility Tribunal (PRT) held a hearing. Arnett and six character witnesses testified. The OBA presented testimony from its investigator, Leslie Arnold. The PRT recommended that Arnett should be reinstated as a member of the OBA. The OBA did not oppose the PRT's recommendation for reinstatement.
STANDARD OF REVIEW
¶8 This Court possesses a nondelegable, constitutional obligation to regulate the practice of law as well as the ethics, licensure, and discipline of Oklahoma practitioners. In re Reinstatement of Rickey, , ¶ 4, , 574; In re Reinstatement of Kerr, , ¶ 6, , 1121. We give great weight to the findings of the trial panel, but its findings are not binding on this Court. Rickey, , ¶ 4, 442 P.3d at 574. We review the record de novo. Id.
DISCUSSION
¶9 We analyze Arnett's request for reinstatement in relation to four factors: (1) the present moral fitness of the petitioner; (2) her engagement in any unauthorized practice of law in Oklahoma; (3) her competency to practice law; and (4) her compliance with other requirements for reinstatement. See id.; In re Reinstatement of Christopher, , ¶ 5, , 1223; see also Rule 11.5, RGDP. In looking at these factors, we have considered (1) the petitioner's demonstrated consciousness of the wrongful conduct and disrepute which the conduct has brought the profession; (2) the extent of the petitioner's rehabilitation; (3) the seriousness of the original misconduct; (4) the petitioner's conduct subsequent to discipline; (5) the time which has elapsed since the original discipline; and (6) the petitioner's character, maturity, and experience at the time of disbarment. In re Reinstatement of Kamins, , ¶ 20, , 1130.
A. Moral Fitness
¶10 We first consider Arnett's current moral fitness. Any petitioner seeking reinstatement bears the burden of proving by clear and convincing evidence that, if reinstated, that the petitioner's conduct will conform to the high standards required of members of the bar. Rule 11.4, RGDP. The petitioner must present stronger proof of qualifications than those seeking admission for the first time. Id.
¶11 Arnett has never faced disciplinary action by the OBA. She practiced for approximately fifteen years after being admitted into the OBA and maintained good standing with the OBA until her suspension in 2018. Prior to the incident involving Brown, Arnett volunteered by fostering dogs, participating in the Ask A Lawyer program that is part of the OBA's Law Day celebrations, and coaching a mock trial team.
¶12 The testimony presented at the PRT hearing demonstrated Arnett possesses the requisite moral character to return to practice. Arnett presented testimony from six witnesses at the PRT hearing: Paul Zardus, her husband; Skylar Collins, her cellmate in prison; Sara Layne, her sister; Lora Howard, her current supervisor at the Tulsa County Public Defender's office; and Scott Goode, a Tulsa attorney that participated in Lawyers Helping Lawyers (LHL) and AA meetings with Arnett. They testified to Arnett's trustworthiness and general character. The OBA's investigator testified that he did not find any concerns regarding Arnett's moral fitness arising from his investigation of Arnett.
¶13 After the incident involving Brown, Arnett contacted LHL and was assigned a mentor with whom she had frequent contact prior to her incarceration. She also attended an AA group daily. Arnett underwent an alcohol assessment, and the assessment did not result in any kind of recommendation for treatment. Arnett testified at the hearing that she is not an alcoholic. She attended AA meetings for support and to learn about the concept of acceptance.
¶14 Arnett also rehabilitated herself through the volunteer work she did during her incarceration and has continued to do since her release. Arnett has helped hundreds of women by providing resume writing skills and assisting with career coaching.
¶15 The testimony presented at the PRT hearing also demonstrated how remorseful Arnett was for the death of Brown. Arnett and her family members testified that Arnett took responsibility for the incident. Specifically, Arnett's husband testified that Arnett understood why she was incarcerated and was "absolutely" remorseful. Arnett's sister testified Arnett pled guilty to the criminal charges against her to avoid bringing any additional embarrassment to the legal system and having anyone endure a trial. Arnett also demonstrated an awareness of the seriousness of her original conduct and understood that the harm she caused was profound. Arnett wrote letters to both Brown's father and brother and then spoke to Brown's father, expressing remorse for her conduct.
¶16 The only question as to Arnett's moral character arises from her continued use of alcohol. Arnett admitted that she has on a couple of occasions consumed alcohol since her release from prison, which is a violation of the terms of her probation. Arnett testified that she understands that she cannot drink alcohol and testified that she would not do so again. Arnett continues to attend AA meetings and is involved in LHL. Even with this concern, the OBA does not contest Arnett's reinstatement.
¶17 We find by clear and convincing evidence that despite Arnett's alcohol use since her release from incarceration, Arnett possesses the moral fitness necessary for reinstatement.
B. Unauthorized Practice of Law
¶18 We next consider whether Arnett engaged in any unauthorized practice of law. Rule 11.1(a)(2) of the RGDP requires that a petitioner seeking reinstatement submit an affidavit from each court clerk of the several counties in which the petitioner resided after suspension, establishing that the petitioner has not practiced law in their respective courts during that period. See Rule 11.1(a), RGDP; see also, e.g., Rickey, , ¶ 12, 442 P.3d at 576.
¶19 Arnett submitted affidavits from the court clerks of Tulsa County and Muskogee County, which both state that a search of their respective court records revealed no evidence that Arnett had practiced law in those counties since her suspension. OBA Investigator Arnold researched both the district and federal courts and found no evidence that Arnett had engaged in the unauthorized practice of law in Oklahoma since her suspension.
¶20 Arnett testified that she has not engaged in the practice of law since her suspension. Testimony from her cellmate in prison and her current supervisor also confirmed that Arnett did not engage in the practice of law while incarcerated or working at her current employment with the Tulsa County Public Defender's office.
¶21 We find by clear and convincing evidence that Arnett has not engaged in the unauthorized practice of law in Oklahoma.
C. Professional Competence 
¶22 We next consider Arnett's professional competence. A petitioner seeking reinstatement is required to demonstrate sufficient competency and learning in the law. Rule 11.5(c), RGDP.
¶23 Arnett has been suspended from the practice of law since September 2018. In the four years since her suspension, Arnett kept herself informed as to the current developments in the law by reading the Oklahoma Bar Journal while incarcerated and reading case law since being released. Arnett was exempt from taking Mandatory Continuing Legal Education (MCLE) courses for the years 2020 and 2021.
¶24 Since February 2022, Arnett has worked as a paralegal in the Tulsa County Public Defender's office. She primarily performs client intake, trial preparation work, and research and writing. She does not interact with clients. Arnett has taken the initiative to teach herself criminal law and procedure while working at the public defender's office. Arnett spends approximately eight to ten hours a week performing legal research. Lora Howard, her supervisor at the public defender's office, testified to Arnett's competency and work ethic in her current position. The public defender's office created a position for Arnett if she is reinstated, which would involve community advocacy and assisting in reentry for individuals released from incarceration.
¶25 Howard has known Arnett since December 2007. Howard had frequent contact with Arnett when Arnett worked for DHS, and Howard represented children in court cases through the public defender's office. She described Arnett as an excellent lawyer, who was always prepared for her cases and would help people meet the requirements necessary for each case.
¶26 Scott Goode, a practicing attorney in Tulsa, has known Arnett since 2006. While working at DHS, Arnett helped Goode and many other lawyers understand certain laws surrounding paternity issues, child support modification, and child support enforcement. Goode testified that Arnett was "well beyond" other lawyers in her skill and knowledge of the law.
¶27 Based on Arnett's experience at the time of her suspension and her acquired knowledge in her current position, we find by clear and convincing evidence that Arnett has demonstrated sufficient competency and learning in the law to be reinstated.
D. Other Requirements for Reinstatement
¶28 Finally, we consider the other requirements for reinstatement, including whether the petitioner is current on bar dues and has paid other fees associated with the disciplinary action. See, e.g., In re Reinstatement of Walker, , ¶ 26, --- P.3d ---. Arnett has paid her Oklahoma Bar Association dues every year since her suspension. She is now current. Arnett also paid her fees in the amount of $4,077.65 associated with her disciplinary case. See Arnett, , . No client funds were paid out on her behalf from the OBA's Client Security Fund.
ANALYSIS
¶29 Based on our review of this matter, we hold the record shows by clear and convincing evidence that Arnett has met the prerequisites for reinstatement. This matter is akin to In re Reinstatement of Morgan, , , wherein Morgan sought reinstatement after resigning from the OBA. Morgan caused an accident to occur when he engaged in drag racing while under the influence of alcohol and fatally injured a passenger in his vehicle. Id. ¶ 2, 340 P.3d at 2. Morgan pled nolo contendere to a felony count of manslaughter in the first degree-automobile and a misdemeanor count of driving under the influence. Id. ¶ 3, 340 P.3d at 2. Morgan filed his petition for reinstatement five years and one month after the date of his resignation. Considering the same factors discussed in this matter, the Court granted Morgan's petition for reinstatement. The Court noted that although Morgan's crime was extremely serious, the record reflected it was a one-time incident done without malice and did not involve clients. Morgan also did not have any prior disciplinary infractions. Id. ¶ 21, 340 P.3d at 6.
¶30 Here, Arnett's criminal actions were also extremely serious, and we do not take that lightly. However, the record indicates it was a one-time incident done without malice that did not involve clients. Arnett also has no disciplinary history. As in Morgan, we find Arnett has satisfied our inquiry into the factors we consider for reinstatement. Id.
APPLICATION FOR COSTS
¶31 The OBA filed an Application to Assess Costs in the prosecution of this matter pursuant to Rule 11.1 (c), RGDP in the amount of $161.51. The application is granted.
CONCLUSION
¶32 Emma Barlie Arnett is hereby reinstated to membership in the Oklahoma Bar Association and her name shall be placed on the Roll of Attorneys licensed to practice law in the State of Oklahoma. Upon her reinstatement, Arnett is required to terminate her exemption and obtain twelve MCLE credits, including two ethics credits, for the calendar year in which she is reinstated. She shall pay the costs in the amount of $161.51 incurred in the prosecution of this case within thirty (30) days from the date of this opinion. She shall further pay the balance of the costs, fines, fees, and assessments ordered in CF-2017-6171 within 120 days from the date of this opinion. Finally, Arnett is required to abide by the conditions of her criminal probation and immediately notify the OBA in the event her probation is revoked.
PETITION FOR REINSTATEMENT IS GRANTED;
PETITIONER IS ORDERED TO PAY COSTS.
CONCUR: Kane, V.C.J., Kauger, Winchester, Edmondson, Gurich, and Kuehn, JJ.
DISSENT: Darby, C.J., Combs (by separate writing), and Rowe (by separate writing), JJ.
FOOTNOTES
 Rule 9.1 of the RGDP states:
When the action of the Supreme Court becomes final, a lawyer who is disbarred or suspended, or who has resigned membership pending disciplinary proceedings, must notify all of the lawyer's clients having legal business then pending within twenty (20) days, by certified mail, of the lawyer's inability to represent them and the necessity for promptly retaining new counsel. If such lawyer is a member of, or associated with, a law firm or professional corporation, such notice shall be given to all clients of the firm or professional corporation, which have legal business then pending with respect to which the disbarred, suspended or resigned lawyer had substantial responsibility. The lawyer shall also file a formal withdrawal as counsel in all cases pending in any tribunal. The lawyer must file, within twenty (20) days, an affidavit with the Commission and with the Clerk of the Supreme Court stating that the lawyer has complied with the provisions of this Rule, together with a list of the clients so notified and a list of all other State and Federal courts and administrative agencies before which the lawyer is admitted to practice. Proof of substantial compliance by the lawyer with this Rule 9.1 shall be a condition precedent to any petition for reinstatement.
 On the day of the hearing, the non-lawyer panel member was absent due to an illness. Both Arnett and the OBA agreed to the hearing being conducted by only two PRT lawyer members. Two of the three-panel members constitute a quorum to conduct a hearing, rule on evidence, and render findings of fact and conclusions of law. See Rule 6.6, RGDP.
 Rule 11.5 of the RGDP states:
At the conclusion of the hearing held on the petition for reinstatement, the Trial Panel of the Professional Responsibility Tribunal shall file a report with the Supreme Court, together with the transcript of the hearing. Said report shall contain specific findings upon each of the following:
(a) Whether or not the applicant possesses the good moral character which would entitle him to be admitted to the Oklahoma Bar Association;
(b) Whether or not the applicant has engaged in any unauthorized practice of law during the period of suspension, disbarment or resignation;
(c) Whether or not the applicant possesses the competency and learning in the law required for admission to practice law in the State of Oklahoma, except that any applicant whose membership in the Association has been suspended or terminated for a period of five (5) years or longer, or who has been disbarred, shall be required to take and successfully pass the regular examination given by the Board of Bar Examiners of the Oklahoma Bar Association. Provided, however, before the applicant shall be required to take and pass the bar examination, he shall have a reasonable opportunity to show by clear and convincing evidence that, notwithstanding his long absence from the practice of law, he has continued to study and thus has kept himself informed as to current developments in the law sufficient to maintain his competency. If the Trial Panel finds that such evidence is insufficient to establish the applicant's competency and learning in the law, it must require the applicant to take and pass the regular bar examination before a finding as to his qualifications shall be made in his favor.
 Rule 11.4 of the RGDP states in pertinent part:
An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time.

COMBS, J., with whom DARBY, C.J., joins dissenting:
¶1 I respectfully dissent to the reinstatement of Emma Barlie Arnett to membership in the Oklahoma Bar Association. Ms. Arnett received a twelve year sentence as a result of her guilty plea to a felony crime in Tulsa County, Oklahoma (Case No. CF-2017-6171). She was sentenced on July 23, 2018 to serve four years in the custody of the State Department of Corrections and the last eight years to be suspended while she is supervised by the department during that period. Although she has been released from custody, she will continue to remain on probation for many more years.
¶2 I disagree with the majority's finding that this matter is akin to In re Reinstatement of Morgan, , . Although both matters concern an alcohol related death, Morgan differs from the present case, i.e., at the time Morgan filed his petition for reinstatement he had completed his deferred sentence and was no longer under probation. I have previously expressed my concern with an attorney practicing law while on probation. In State of Oklahoma ex rel. Okla. Bar Ass'n v. Brown, , ¶3, , 902 (Combs, J., dissenting) I wrote, "[the] Respondent has entered a plea of guilty to a felony and should not be allowed to practice law while his sentencing status remains in doubt. In short, being on felony probation is incompatible with the practice of law." Being on probation has the potential to cause irreparable damage to an attorney's clients. A violation of any probationary term could cause the revocation of a suspended sentence and may result in the offending attorney being incarcerated. The present case especially concerns me on this point. Ms. Arnett has already admitted to drinking alcohol in violation of the terms of her probation.
¶3 I find that Ms. Arnett is not ready to be reinstated to the practice of law in Oklahoma and this Court should not consider reinstatement until, at the very least, the terms of her sentence have been fulfilled.

Rowe, J., dissenting:
¶1 Petitioner consumed several glasses of wine at a party and chose to drive herself home when she hit and killed a pedestrian. Instead of calling 911 at the scene of the accident, Petitioner called her husband and instructed him to call another attorney. When police arrived, Petitioner refused to take a breathalyzer test and had to be taken to the hospital for a blood test after a search warrant was issued. The blood test showed her blood alcohol level was 0.142, almost two times the legal limit.
¶2 On July 23, 2018, Petitioner pled guilty to the felony crime of Manslaughter in the First Degree. She was sentenced to four years in the custody of the Department of Corrections, with eight years suspended under the supervision of the department. Petitioner was released from custody on December 13, 2021, to begin her eight years of probation. Petitioner sought reinstatement of her law license only three months after her release from prison.
¶3 This Court has the duty to preserve the high ethical and moral standards required before a person is entitled to enjoy the privilege to practice law. In re Reinstatement of Kamins, , ¶ 20, , 1129 (quoting State v. Russo, 630 P.2d 711, 714 (Kan. 1981)). Our profession exists to serve the public. "A license to practice law is not conferred for the benefit of the licensee, but for that of the public." State ex rel. Okla. Bar. Ass'n v. Giger, , ¶ 18, , 863-864. Accordingly, the disciplinary process is designed not to punish the offending lawyer, but to safeguard the interest of the public, the judiciary, and the legal profession. Id.
¶4 When seeking reinstatement an applicant "bears the heavy burden of showing, by clear and convincing evidence, that reinstatement is warranted." Matter of Reinstatement of Conrady, , ¶ 4, , 221. In fact, an applicant seeking reinstatement must present stronger proof of qualifications than one seeking admission for the first time. Rule 11.4, Rules Governing Disciplinary Proceedings.
¶5 A felony conviction alone will not prevent reinstatement, rather each reinstatement decision is determined on a case-by-case basis. In re Reinstatement of Seelye, , ¶ 4, , 839. Nonetheless, the more severe the offense, the heavier the burden an applicant faces. Id. In determining whether an applicant has demonstrated by clear and convincing evidence that reinstatement is warranted, this Court considers several factors. Among the factors, the most troubling in this case is the severity of Petitioner's original misconduct and her present moral fitness.
¶6 During the three months between the time Petitioner was released from prison and her filing for reinstatement, Petitioner admittedly violated the terms of her probation. The terms of her probation provide, "I will not use or be in possession of intoxicants. . ." Petitioner admits to consuming alcohol eleven days after her release from prison and two additional times since then. Such a violation could result in the revocation of her suspended sentence and require Petitioner to serve the remaining eight years of her sentence. Consequently, this would result in irreparable harm to Petitioner's clients and bring disrepute upon the legal profession.
¶7 The majority cites In re Reinstatement of Morgan, ,  to support its decision to reinstate. Although Morgan concerned an alcohol related automobile death, it is distinguishable. Morgan was not on probation when he applied for reinstatement; the likelihood of him returning to prison was not an issue. To the contrary, Petitioner is still under probation and in her application for reinstatement admitted that she has already violated the terms of her probation.
¶8 Further, Petitioner recklessly took the life of another, was convicted of a felony, and now continues to engage in the misconduct that contributed to the horrendous accident. This type of behavior demonstrates Petitioner does not understand the severity of her misconduct nor does she recognize the gravity of the consequences that may result from it. Her conscious disregard for her actions since her release from prison demonstrates she does not have the requisite present moral fitness to practice law.
¶9 To find that Petitioner possesses the necessary present moral fitness to practice law, the majority relied upon, among other things, testimony from the Petitioner's prison cellmate. This is troubling. The cellmate's testimony regarding present moral fitness can only attest to the character observed while in prison. I find such testimony unpersuasive and unreliable.
¶10 Petitioner remains on probation, has violated the terms and conditions of her probation, and stands to return to prison. Her continuing to drink in knowing violation of her probation demonstrates she does not possess the present moral fitness necessary to be reinstated. Thus, I respectfully cannot assent to the reinstatement of Petitioner's law license.
FOOTNOTES
 In seeking reinstatement, an applicant must satisfy a number of prerequisites, including that he (1) possesses good moral character, (2) has not engaged in any unauthorized practice of law, and (3) possesses the competency and learning in the law required for admission. Rule 11.5, RGDP. We also consider the following factors: (1) the applicant's present moral fitness; (2) demonstrated consciousness of the conduct's wrongfulness and the disrepute it brought upon the legal profession; (3) the extent of rehabilitation; (4) the seriousness of the original misconduct; (5) conduct after resignation; (6) time elapsed since resignation; (7) the applicant's character, maturity, and experience when suspended; and (8) present legal competence. In re Reinstatement of Blake, , ¶ 9, , 469.
 Oklahoma Bar Association Hearing Exhibit No. 3.
 




