**In The Matter of the REINSTATEMENT OF David N. PIERCE,**

**To Membership In The Oklahoma Bar Association And To The Roll Of Attorneys.**

**SCBD No. 4071.**

Supreme Court of Oklahoma.

May 21, 1996.

Valerie Couch, Oklahoma City, for Petitioner, David N. Pierce.

Janis Hubbard, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Respondent, Oklahoma Bar Ass'n.

SIMMS, Justice:

David N. Pierce, Petitioner, submitted his resignation from the Oklahoma Bar Association on April 24, 1989, while four complaints of professional misconduct were pending against him. This Court approved his resignation on May 29, 1989. He now seeks reinstatement to the Oklahoma Bar Association and readmission to the Roll of Attorneys. The Oklahoma Bar Association (Respondent) objects to Pierce's quest for readmission.

Pierce's resignation was prompted by his arrest and being charged with thirteen drug-related counts. In August, 1989, he pled guilty to eleven of the counts. Pierce was convicted on a plea of guilty to one count of Conspiracy to Distribute a Controlled Dangerous Substance, to-wit, Amphetamine (Methamphetamine); three counts of Distribution of a Controlled Dangerous Substance, i.e. Methamphetamine; four counts of Maintaining a Place Where a Controlled Dangerous Substance is Kept; a single count of Distribution of Illegal Drugs; and, two counts of Possession of a Weapon while committing a felony.

Pierce was sentenced to a term of twenty (20) years in custody of the Department of Correction, with the final five (5) years suspended. He is presently on unsupervised probation and his sentence does not expire until April 15, 1999.

Following Petitioner's filing for reinstatement to practice law, a hearing was conducted by the Professional Responsibility Tribunal (PRT). In addition to Pierce, three witnesses testified in his behalf. First, a lawyer who had been a boyhood friend of Pierce and who had gone through grade school, high school, and law school with him testified that upon Pierce's release from prison, he hired him as a law clerk. He further testified that Pierce had a "brilliant" legal mind, that lawyers associated with the witness would "pick Pierce's brain," that because of Pierce's prison experience, he would be helpful to those prisoners in need of legal services, and that, in the opinion of the witness, the public would be "better off" if Pierce was reinstated to the bar, and the "profession and society would be well-served." This witness also related to the PRT that Pierce has a good home life, a loving wife, good family relationships, and the support of his family.

The next witness called to testify on behalf of Petitioner was the attorney who represented Pierce in the criminal proceedings. He testified that Pierce readily admitted his guilt of the drug-related offenses to the witness and applicant entered a "blind plea" of guilty to the eleven counts, that is, the plea of guilty was entered without any agreement as to recommended punishment by the District Attorney. Pierce's lawyer also testified that shortly after Pierce was released from jail on bond following arrest, and before the pleas of guilty were entered, Pierce voluntarily resigned from the Oklahoma Bar Association. When asked if the witness had an opinion about Pierce's fitness to return to the practice of law, he replied in the affirmative, explaining, "I think, from a moral standpoint, David (Pierce) had high morals in reference to his family and his friends.... I think

David (Pierce) is very intelligent, ... as far as being an attorney. The work he has helped me with, he's been very diligent about it. He's done an excellent job."

This witness related that Pierce has continued through Narcotics Anonymous and Alcoholics Anonymous, and that Pierce could be an "attribute" to the Oklahoma Bar Association.

An experienced and respected Oklahoma City lawyer who specialized in appellate work in criminal cases testified he became acquainted with Petitioner in 1989 while both were doing research in a law library. This attorney had employed Petitioner to work on briefs. This witness testified that he was of the opinion that Petitioner was fit to practice law, was a very good lawyer, and had an excellent mind in the field of criminal law.

Petitioner testified in his own behalf. He admitted his involvement with drugs began in high school and continued through the arrest leading to his conviction. He further noted that his heavy addiction to drugs lead him to sell drugs to support his addiction. While he was so heavily addicted, he began to neglect his clients which lead to four formal complaints being filed against him for neglect of his clients, including one in which he admittedly permitted the statute of limitations to run on a workers compensation claim. His testimony revealed that immediately following his resignation from the bar, he notified what he believed were all his clients and made arrangements for other representation of those clients. However, he neglected to inform one of his clients who had an appeal pending in the Supreme Court of Oklahoma.

Rule 9.1, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides, *inter alia*, that upon resignation from the practice of law pending disciplinary proceedings, a lawyer shall give notice to all his clients within twenty (20) days of his inability to represent them, and within that period, file an affidavit with the Clerk of this Court and the Professional Responsibility Commission, stating compliance with the Rule. Rule 9.1 specifically provides:

"... Proof of substantial compliance by the lawyer with this Rule 9.1 *shall be a condi-tion precedent to any petition for rein-statement.*" (Emphasis added).

Petitioner admitted the Rule 9.1 affidavit *was not filed until they day prior to the hearing* before the PRT on his application for reinstatement.

Pierce testified he had been "sober" since his arrest in 1988, and remains active in Alcoholics Anonymous and Narcotics Anonymous. He has become a sponsor in the programs. He maintains he continues to be competent in the law by reading bar journals, Federal Reports dealing with criminal law, and Supreme Court Reports, when available; he attended one breakfast continuing legal education seminar in criminal law approximately a year and a half before the hearing; his work for other lawyers as a salaried clerk keeps him abreast of the law because of research and brief writing; and, some of his research and brief writing is done for other lawyers on a contract basis.

During the hearing, Respondent Bar Association offered the testimony of two witnesses, one by way of stipulation. Both witnesses testified to filing complaints against Pierce for matters occurring before his incarceration. One complaint dealt with failure on the part of Pierce to return a file to a client on request, (the file has never been returned according to testimony), and the second pertained to the workers compensation claim now barred by the statute of limitations because of the neglect of Petitioner.

After listening to argument of counsel, the Professional Responsibility Tribunal recommended Pierce be reinstated to the practice of law and readmitted to the Role of Attorneys. Counsel for the Bar Association objects to reinstatement of applicant.

The standard of proof for petitions for reinstatement is set forth in Rule 11.4, Rules Governing Disciplinary Procedure, 5 O.S. 1991, Ch. 1, App. 1–A. It provides:

"An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. *The severity of the original of-*

*fense and the circumstances surrounding it shall be considered* in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. *An applicant seeking reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time.* The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. *Feelings of sympathy toward the applicant must be disregarded.* ... Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules." (Emphasis added).

This court, in *In the Matter of Reinstatement of Kamins,* 752 P.2d 1125 (Okla.1988), set forth eight separate criteria for reinstatement for a lawyer who was either disbarred or resigned pending disciplinary proceedings. The PRT in the case at bar found Petitioner had met these criteria in recommending reinstatement. However, the Bar Association primarily takes exception with two of the tribunal's findings, i.e. that Petitioner possesses the good moral character which would entitle him to reinstatement and that Petitioner has successfully rehabilitated himself. We find a third factor, that of the seriousness of Petitioner's offenses, to also be of great concern.

■ The trial panels' recommendations in attorney reinstatement cases are entitled to great weight; however, such recommendations are merely advisory in nature. *Matter of Reinstatement of Kamins, supra; In the Matter of the Reinstatement of Page,* 866 P.2d 1207 (Okla.1993). The ultimate decision rests with the Supreme Court which reviews the matter *de novo. Matter of Reinstatement of Kamins, supra; State ex rel. Oklahoma Bar Ass'n. v. Samara,* 683 P.2d 979 (Okla 1984); *In the Matter of the Reinstatement of Hanlon,* 865 P.2d 1228 (Okla.1993). In considering the petition for reinstatement, this Court is to consider the eight factors of *Matter of Reinstatement of Kamins* while holding to our primary duty of safeguarding

the public, the courts and the legal profession.

"In doing so the Court balances the interest of the applicant against the fact that the very nature of the profession places an attorney in a position where an unprincipled person may do tremendous harm to the public and to his clients. It is because of the great potential for harm that the burden on one seeking readmission [i.e., clear and convincing evidence] is so great." *Matter of Reinstatement of Kamins,* 752 P.2d at 1130.

We are not convinced that Petitioner has met the burden placed upon him by the Rules Governing Disciplinary Proceedings and the precedents set by this Court in regards to those Rules.

■ One of our primary concerns with Pierce's efforts to be readmitted stems from the seriousness of the wrongful conduct which led to his resignation.[1] At the outset we note that an applicant seeking reinstatement must present stronger proof of qualifications than one seeking admission for the first time. Rules Governing Disciplinary Proceedings Rule 11.4, *supra; In the Matter of the Reinstatement of Smith,* 871 P.2d 426 (Okla.1994). In fact, the more severe the offense leading to resignation, the heavier the burden an applicant must overcome to be readmitted. *Id.; In the Matter of the Reinstatement of Cantrell,* 785 P.2d 312 (Okla. 1989). In passing on a petition for readmission by one convicted of felonies, we must thoroughly and critically review the crimes and their effect on the legal profession. *Matter of Reinstatement of Smith, supra.*

"To this end, the evidence must support a finding that the Applicant would not commit any serious crime if readmitted. Foremost consideration must be given to protecting the public welfare. Finally, there must be a determination that reinstatement would not adversely effect the Bar." *Matter of Reinstatement of Cantrell,* 785 P.2d at 313. *See also Matter of Reinstatement of Smith,* 871 P.2d at 428 (quoting *Matter of Reinstatement of Cantrell* ).

---

1. The "seriousness of the original misconduct" is one of the eight (8) factors to consider in rein-

statement proceedings. *Matter of Reinstatement of Kamins,* 752 P.2d at 1130.

In *Matter of Reinstatement of Smith,* the applicant presented numerous credible witnesses to testify as to his good conduct since his seventeen (17) felony convictions. The tribunal recommended reinstatement be granted. Despite this abundant evidence, we denied reinstatement because such evidence was not enough to surmount the heavy burden placed upon him. In our mind, the seriousness of the convictions and their adverse impact on the legal profession were too great to overcome.

Likewise, the seriousness of Pierce's convictions outweigh the evidence presented on his behalf. The seriousness of his offenses is perhaps best expressed by Petitioner in his Brief in Support of Recommendation where he states:

"There is no dispute as to the seriousness of the behavior that led to Pierce's resignation. Drug use and distribution is the most significant problem facing society. The very real economic, social and human costs are staggering."

We agree. Not only did Pierce's addiction to drugs affect himself, such addiction impacted those around him, including his clients. His use of drugs led to the commitment of numerous felonies, the most troubling of which was the sale of illegal drugs to others. Pierce stated that he sold drugs in order to support his own habit. Thus, Petitioner's distribution of drugs not only made it possible for him to continue a destructive habit but also fostered and promoted the same destruction in the lives of others. His conduct adversely affected the legal matters of his clients and tarnished the image of the legal profession.

■ Respondent argues Pierce has failed to prove by clear and convincing evidence that his conduct will conform to the high standards required by the Bar Association regarding good moral character, another factor cited by *Matter of Reinstatement of Kamins, supra,* as a consideration in reinstatement proceedings. Although Pierce presented evidence indicating he had engaged in proper conduct during the period

following his resignation, evidence of proper conduct without more does not warrant readmission. *Matter of Reinstatement of Hanlon, supra; Matter of Reinstatement of Cantrell, supra.* Rather, the applicant must show that he has been rehabilitated and his conduct will conform to the high standard of good moral conduct. *Id.; State of Oklahoma ex rel. Oklahoma Bar Ass'n. v. Gresham,* 599 P.2d 401 (Okla.1979).

Petitioner's evidence of his good moral character came from himself and three attorneys who testified on his behalf. Each of the attorneys is either associated with him or has hired him to do legal work since leaving prison. These witnesses clearly are credible references of Pierce's work ethic and legal competence. Their opinion as to his moral character also holds some weight with this Court. However, Petitioner presented no evidence to show change in character since he was arrested for selling drugs.

In addition, Petitioner was under supervised parole until April 18, 1995. Within two (2) weeks of being discharged from supervised parole, he applied for reinstatement. We find two (2) weeks insufficient time on one's own to prove that the good moral character he was presumed to have upon his first application for bar membership had been regained. The evidence did not clearly and convincingly establish that Pierce's conduct will conform to the Bar Association's high standards of good moral character.[2]

■ Likewise, Petitioner failed to prove by clear and convincing evidence that he is rehabilitated. In *Matter of Reinstatement of Hanlon, supra,* we refused to readmit the applicant who had been convicted of possession of and conspiracy to possess a controlled dangerous substance. He was sentenced to a five-year term, four years of which were on probation. Prior to petitioning for readmission to the Bar Association, the applicant's criminal sentence was discharged by the trial court. Despite evidence from several lawyers on his behalf, we found a lack of clear and convincing evidence of

---

2. We again emphasize that the standards of good moral character are stronger when one is seeking readmission than when that same person first applied for bar membership. *Matter of Reinstatement of Smith, supra; Matter of Reinstatement of Hanlon, infra.*

rehabilitation. The applicant had attended Alcoholics Anonymous meetings and waited to apply for readmission until he knew he was "off of alcohol", but submitted little evidence of rehabilitation. Based on the lack of rehabilitation evidence and the seriousness of his offenses, this Court denied his petition for reinstatement.

In the case at bar, the attorney witnesses and Pierce testified that he had successfully completed the twelve (12) step program of Narcotics Anonymous and Alcoholics Anonymous and that he was acting as a sponsor/support person for new enrollees in the Narcotics Anonymous program. Other than this evidence and the fact that Pierce testified that he had been "sober" since his arrest, no evidence of rehabilitation was presented. He did not call his Narcotics Anonymous or Alcoholics Anonymous sponsor or any of the members or counselors associated with those programs. No psychiatrist, psychologist, doctor, or any other professional that could credibly testify on the extent of rehabilitation was presented.

Moreover, as a condition of his probation, Pierce is subject to random urinalysis tests to determine if he has ingested any illegal drugs. The last test he had occurred one-and-a-half years before the tribunal hearing. No current test corroborating his evidence of sobriety was presented. Additionally, as noted above, at the time Pierce applied for reinstatement, he had been without some form of supervision for only two weeks. Thus, no time had elapsed to prove that any rehabilitation achieved by his efforts would continue without supervision. Pierce failed to present clear and convincing evidence that he was rehabilitated.

 Additionally, Petitioner clearly failed to comply with Rule 9.1 in that he did not give notice to all of his clients that he would no longer be able to represent them and he did not file an affidavit of compliance within twenty (20) days of his resignation. Not only is such compliance with Rule 9.1 a condition precedent to a petition for reinstatement, *see* Rule 9.1, *supra*, but Rule 11.4, *supra*, also requires the PRT to be satisfied that an applicant for readmission has complied with Rule 9.1. Although the PRT found Petitioner had substantially complied with the Rule, we do not. Filing the requisite affidavit on the day before the reinstatement hearing does not constitute compliance. This is especially true here where Petitioner admitted that at the time of his resignation he was only representing only a few clients.

The Petition for Reinstatement of David N. Pierce to Membership in the Oklahoma Bar Association and to the Roll of Attorneys is hereby DENIED. On application of the Bar Association, costs are assessed against Pierce in the sum of $895.80. The costs are to be paid by order of this Court within thirty (30) days of the date of mandate of this opinion.

. ALMA WILSON, C.J., KAUGER, V.C.J., and HARGRAVE, OPALA and WATT, JJ., concur.

HODGES, LAVENDER, and SUMMERS, JJ., concur in result.