IN THE MATTER OF THE REINSTATEMENT OF SCOTT
2022 OK 67
Case Number: SCBD-6962
Decided: 06/28/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 67, __ P.3d __

 

 

IN THE MATTER OF THE REINSTATEMENT OF:

JOEL EDWARD SCOTT, III, TO MEMBERSHIP IN THE OKLAHOMA BAR ASSOCIATION AND TO THE ROLL OF ATTORNEYS, Petitioner,
v.
OKLAHOMA BAR ASSOCIATION, Respondent.

ORIGINAL PROCEEDING FOR RULE 11 BAR REINSTATEMENT

¶0 Petitioner, Joel Edward Scott, III, (Scott) seeks reinstatement to membership in the Oklahoma Bar Association (OBA) pursuant to Rule 11, Rules Governing Disciplinary Proceedings (RGDP), after this Court approved Petitioner's voluntary resignation pending disciplinary proceedings. Multiple grievances were filed against Petitioner for misconduct, including misappropriation of client and third party funds, misrepresentations, neglect, failure to respond to the OBA during its investigation, and the issuance of a tax warrant. After a reinstatement hearing, the Professional Responsibility Tribunal (PRT) determined Petitioner had not established by clear and convincing evidence that he had met all of the requirements for reinstatement and recommended that Petitioner's Petition for Reinstatement be denied. Upon de novo review, we agree and hold that reinstatement should be denied and impose $303.19 in costs.

REINSTATEMENT DENIED; COSTS IMPOSED. 

Dan Murdock, Edmond, Oklahoma, for Petitioner.

Loraine Dillinder Farabow, First Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Respondent.

KANE, V.C.J.:

¶1 The dispositive issue is whether Petitioner qualifies for readmission.

I. FACTS AND PROCEDURAL HISTORY

¶2 Petitioner, Joel Edward Scott, III, (Petitioner), was admitted to the OBA on September 26, 2006.

¶3 On March 15, 2013, the OBA filed a four count grievance against Petitioner alleging misappropriation of client and third party funds, neglect, and failure to respond to the OBA during its investigation. The OBA then filed an amended complaint on October 14, 2013, alleging seven counts of misconduct involving misappropriation of client and third party funds, misrepresentations, neglect, failure to respond to the OBA during its investigation, and the issuance of a tax warrant.

¶4 On February 13, 2014, Petitioner, through his attorney of record, tendered his Affidavit of Resignation Pending Disciplinary Proceedings pursuant to Rule 8.1, RGDP.

¶5 On March 4, 2014, this Court issued an Order Approving Petitioner's Resignation pursuant to Rule 8.2, RGDP, which is tantamount to disbarment,See OBA v. Scott, 2014 OK 13322 P.3d 456

¶6 On March 27, 2014, Scott filed an affidavit pursuant to Rule 9.1, RGDP, averring under oath that he had withdrawn from all pending cases and had notified all of his clients of his inability to represent them. Despite filing this Rule 9.1 affidavit, at least one of his clients testified at his reinstatement hearing that she did not receive notice of his resignation pending disciplinary proceedings. This same client also testified at Petitioner's reinstatement hearing that Petitioner never withdrew from her case and that to her knowledge, her legal matter was still pending. This client's testimony is supported by Petitioner's own Rule 9.1 affidavit, which does not show that this particular client was ever provided notice of his withdrawal, as well as the docket sheet in that case which shows that Petitioner failed to file a motion to withdraw and was never granted leave to withdraw in that matter.

¶7 The Oklahoma Client Security Fund Committee received multiple claims against Petitioner. The Committee approved three claims, but due to limited funds, it was only able to pay forty cents ($0.40) on the dollar of the total amounts approved to the claimants. Petitioner never made full restitution to those CSF claimants and has not offered or made restitution to any of his other victims to which he caused financial harm.

¶8 Along with his resignation pending disciplinary proceedings, Petitioner was ordered to pay the costs of the OBA's investigation in the amount of $1,660.72 within ninety days of the Order, and he was ordered to repay the Client Security Fund for any funds expended. Petitioner did not pay the costs as ordered by this Court, nor did he request an extension of time in which to pay. As a result, Petitioner filed his Petition for Reinstatement prior to making restitution to his victims and the Client Security Fund and prior to paying the costs assessed against him in 2014 in OBA v. Scott, 2014 OK 13322 P.3d 456See Scott, 2014 OK 13322 P.3d 456

¶9 On August 5, 2020, Petitioner filed a Petition for Reinstatement of his license to practice law pursuant to Rule 11, RGDP. However, Petitioner failed to attach three required exhibits to his petition for reinstatement, although he did reference the three exhibits within his Petition for Reinstatement.

¶10 On August 26, 2020, Petitioner reimbursed the Client Security Fund in the amount of $2,039.08. On the same date, Petitioner paid the costs assessed against him in OBA v. Scott, 2014 OK 13322 P.3d 456

¶11 Upon receipt of the Petition for Reinstatement, the OBA requested Petitioner to complete a questionnaire in order for it to conduct a background investigation as required pursuant to Rule 11.2, RGDP.failed to submit the necessary information.

¶13 Testimony from Petitioner's reinstatement hearing shows Petitioner failed to disclose or attach pleadings from multiple civil lawsuits in which he was involved, failed to account for lawsuits filed against him alleging the unauthorized practice of law and/or fraud, misrepresentation, and deceit, failed to account for various numerous periods of unemployment, and claimed he had received a private reprimand for his past misconduct as opposed to resigning pending disciplinary proceedings.

¶14 Additionally, Petitioner disclosed yet another employment position that was neither listed on his response to the reinstatement questionnaire nor mentioned during his testimony at his reinstatement hearing. In his Brief-in-Chief, Petitioner now claims that he was employed briefly by Attorneys Mark Bailey and Tim Synar, as a paralegal/investigator. Petitioner claims he "believed it was necessary to distance himself from any acts that did not meet the ethical standards attorneys should value . . ." and that it is his "understanding that Mr. Bailey is currently facing disciplinary charges and Mr. Synar has moved out of jurisdiction and [sic] no longer practicing law. These circumstances allowed Mr. Scott to see 1st [sic] hand how careless acts of an attorney can harm someone." See Petitioner's Brief at 17(ii)(2) at p. 8.

¶15 Petitioner took twelve hours of continuing legal education (CLE) in 2019 and an additional twelve hours of CLE from April 22 through April 27 of 2021 after he filed his Petition for Reinstatement. From January 2014 until 2019, however, Petitioner failed to take any CLE. On or about June 2020, Petitioner provided paralegal services on occasion to Attorney Devin Resides in various legal matters. Petitioner often refused to accept payment for his services.

¶16 The Notices of Publications were given as required by Rule 11.3(b), RGDP, in The Oklahoma Bar Journal on August 2021, Vol. 92, No. 6 edition, and in The Journal Record on August 9, 2021. The notices advised interested persons when and where the reinstatement hearing would be conducted.

¶17 At his reinstatement hearing, the PRT informed Scott that he failed to reference and include affidavit(s) as required by Rule 11.1(a)(2), RGDP, attesting that he had not engaged in the unauthorized practice of law since the termination of his right to practice law. Despite being advised of his failure to comply with Rule 11.1(a)(2), RGDP, Scott never submitted an affidavit "establishing that [he] ha[d] not practiced law in their respective courts since the termination or suspension of his right to practice law." Rule 11.1(a)(2), RGDP.

¶18 Petitioner's reinstatement hearing was held over a three day period in late August 2021. The parties presented evidence and witnesses in their case-in-chief. Petitioner submitted twenty-two exhibits without objection into the record and the OBA submitted 169 exhibits into the record without objection. Petitioner presented the testimony of three witnesses and testified on his own behalf. The OBA presented seventeen witnesses, fifteen of whom opposed Petitioner's reinstatement to the practice of law.

¶19 Petitioner waived any and all rights to contest the fact that his misconduct caused serious financial harm to over a dozen clients, medical providers, and third persons. Sixteen witnesses testified before the PRT as to the harm Petitioner caused their legal matters and/or as to the financial harm he caused.

¶20 Following a three day hearing, a quorumSee Report of the Trial Panel filed September 20, 2021; see Respondent's Amended Application to Assess Costs, filed November 30, 2021; see also Rule 11.5, RGDP.

¶21 Thereafter, pursuant to Rule 11.6, RGDP,

II. STANDARD OF REVIEW

¶22 This Court has the non-delegable, constitutional responsibility to regulate licensure and discipline of Oklahoma attorneys. See In re Reinstatement of Rickey, 2019 OK 36442 P.3d 571 In re Reinstatement of Kerr, 2015 OK 9345 P.3d 1118State ex rel. Okla. Bar Ass'n v. Nichols, 2021 OK 28488 P.3d 734de novo. See State ex rel. Okla. Bar Ass'n v. Hulett, 2008 OK 38183 P.3d 1014In re Reinstatement of Munson, 2010 OK 27236 P.3d 96 See Rickey, 2019 OK 36In re Reinstatement of Bodnar, 2016 OK 12367 P.3d 916In re Reinstatement of Kamins, 1988 OK 32752 P.2d 1125Id. Accordingly, we consider a petition for reinstatement in the OBA without deference to the PRT's findings or recommendations. Each petition for reinstatement to the OBA must be considered on its own merits. See Kerr, 2015 OK 9

¶23 Under Rule 11.4, RGDP,See Bodnar, 2016 OK 12see Rule 11.4, RGDP, note 11 supra; see e.g., In re Reinstatement of Pearson, 2000 OK 619 P.3d 692

III. ANALYSIS

¶24 The traditional factors considered by this Court in reinstatement cases include: (1) the present moral fitness of the applicant; (2) the demonstrated consciousness of the wrongful conduct and disrepute which the conduct has brought the profession; (3) the extent of the applicant's rehabilitation; (4) the seriousness of the original misconduct; (5) the conduct subsequent to discipline; (6) the time that has elapsed since the original discipline; (7) the applicant's character, maturity, and experience at the time of discipline; and (8) the applicant's present competence in legal skills. See In re Reinstatement of Kamins, 1988 OK 32752 P.2d 1125see In re Reinstatement of Pierce, 1996 OK 65919 P.2d 422Pierce, 1996 OK 65

A. Moral Fitness

¶25 This Court has held that "good moral character" as the phrase is used for bar admission, is synonymous with a person's ethical fitness. In re Reinstatement of Hird ("Hird I"), 2001 OK 2821 P.3d 1043more than just a showing of proper behavior. Id. The applicant seeking reinstatement must present stronger proof than required for first time admission. Rule 11.4, RGDP. "[T]he more severe the offense leading to resignation, the heavier the burden an applicant must overcome to be readmitted." Pierce, 1996 OK 65See In re Reinstatement of Cantrell, 1989 OK 165785 P.2d 312Id.

¶26 The PRT found by clear and convincing evidence that Petitioner failed to establish that he possesses good moral character which would entitle him to be admitted to the OBA as required by Rule 11.4, RGDP. The PRT made numerous references to Petitioner's unwillingness to submit and clarify information it requested during its investigation after Petitioner filed his Petition for Reinstatement. Testimony from the reinstatement hearing shows Petitioner failed to attach pleadings from multiple civil suits in which he was involved, failed to account for lawsuits filed against him alleging the unauthorized practice of law and/or fraud, misrepresentation, and deceit, and failed to account for numerous periods of unemployment. Upon review, the PRT's conclusions as to Petitioner's lack of good moral character is clearly supported by the testimony and evidence from Petitioner's Reinstatement hearing.

¶27 As noted by the PRT, even after the Petitioner's reinstatement hearing was concluded, the OBA continued to learn of prior employment positions Petitioner had failed to disclose on his reinstatement questionnaire and/or failed to disclose in his testimony before the PRT at his reinstatement hearing. Upon de novo review, we conclude that Petitioner was not forthcoming with the OBA nor transparent throughout this reinstatement process.

¶28 The record also shows that Petitioner was not forthcoming with two employers regarding his disciplinary history and his employment was terminated as a result, from Chesapeake and CACI. At his reinstatement hearing, Petitioner admitted that he was told he was fired due to his lack of candor about his resignation from the Bar. Despite this admission, Petitioner tries to argue for the first time in his Brief-in-Chief filed with this Court, that two of the three individuals who interviewed him for the position at Chesapeake, Mrs. Kimberly Marchant and Mr. Joel Hubscher, stated in affidavits that they had a discussion with Petitioner regarding his status with the OBA and that they did not determine that (i.e., his resignation from the Bar) to be disqualifying because he would not be engaged in the practice of law. However, the record reflects that Petitioner did not list Mrs. Marchant nor Mr. Hubscher as references on his reinstatement questionnaire, nor did Petitioner list them as witnesses or call them to testify at his reinstatement hearing.

¶29 Petitioner likewise did not provide the OBA with a copy of these purported affidavits during its investigation of his Petition for Reinstatement and did not submit the alleged affidavits as exhibits at his reinstatement proceeding. Instead, Petitioner seeks to introduce these purported affidavits after the record has closed and after the reinstatement hearing has been concluded in an apparent effort to contradict the OBA's mounting evidence of Petitioner's unauthorized practice of law after his resignation pending disciplinary proceedings. We are not persuaded by Petitioner's attempt to recreate the record or the facts. Petitioner appears to be attempting to use these purported affidavits to combat arguments made by the OBA in its Answer Brief to this Court after the record in this case was closed and after the hearing for reinstatement had concluded.

¶30 At the reinstatement hearing, the OBA presented the testimony of sixteen witnesses who outlined the harm caused by the Petitioner, his lack of acceptance of responsibility, his failure to make restitution, and his failure to apologize for his conduct. All of these witnesses testified that they opposed Petitioner being reinstated to the practice of law.

¶31 Petitioner testified on his own behalf at his reinstatement hearing and reaffirmed false testimony he had previously given under oath at his deposition taken by the OBA in 2013, wherein he continued to falsely testify that his CPA, Helen Swope, password locked him out of his banking accounts, which prevented him from reviewing his financial records and paying restitution to his clients and prevented him from providing missing and/or additional information to the OBA for purposes of the OBA's investigation. Ms. Helen Swope testified before the PRT at the reinstatement hearing and again denied Petitioner's accusations and the PRT found them to be without merit.

¶32 Despite claiming he has remorse for his actions and acknowledging that he has caused harm to his clients and others, Petitioner's actions show that he has failed to accept responsibility for his misrepresentations to others, the financial harm he has caused, or the personal attacks he made against Ms. Swope's reputation. Petitioner has made no apologies to these individuals or provided complete restitution to those he harmed.

¶33 Petitioner even lied to his friend and own character witness, Attorney Steven Feisal, regarding the circumstances surrounding the loss of his law license. Mr. Feisal testified at the reinstatement hearing that Petitioner told him he had voluntarily surrendered his law license due to his failure to oversee and manage staff who misappropriated client funds and that it was Petitioner who brought the matter to the Bar's attention. The PRT correctly found this to be false.

¶34 Upon review, these are not actions which reflect good moral fitness. As such, we hold Petitioner has failed to present clear and convincing evidence of the requisite good moral character -- stronger proof of good moral character than when Petitioner was first admitted to the OBA -- necessary for reinstatement.

B. Professional Competence Sufficient for Reinstatement

¶35 Rule 11.5(c), RGDP, provides that an applicant whose membership has been suspended for a period of five (5) years or longer shall be required to take and successfully pass the regular examination given by the Board of Bar Examiners of the Oklahoma Bar Association. See Rule 11.5(c), RGDP. Before the applicant is required to take and pass the bar examination, he shall have a reasonable opportunity to show by clear and convincing evidence that, notwithstanding his long absence from the practice of law, he has continued to study and thus has kept himself informed as to current developments in the law sufficient to maintain his competency. Id.; see In re Reinstatement of Farrant, 2004 OK 77104 P.3d 567

¶36 The requirement that those suspended for five years or more must take and pass a regular bar examination, unless clear and convincing proof to the contrary is offered, creates a presumption that one who has been suspended for five years will not possess sufficient competency in the law to be reinstated, absent an extraordinary showing to that effect. Id. (citing In re Reinstatement of Essman, 1987 OK 102749 P.2d 103

¶37 In the present matter, Petitioner resigned from the OBA on March 4, 2014. From January of 2014 until 2019 (almost five years), Petitioner failed to take any continuing legal education (CLE) courses whatsoever. Prior to filing this Petition for Reinstatement, Petitioner took twelve hours of CLE in 2019. He then took 12 additional hours of CLE between April 22 through April 27, 2021, after he filed for reinstatement.

¶38 The OBA argues that the Petitioner's lack of competency in the law is reflected in the Petition for Reinstatement -- he failed to include the exhibits he referenced therein. The OBA also submits Petitioner's lack of competency is reflected in the questionnaire Petitioner submitted to the OBA which was replete with misrepresentations, omissions, and errors.

¶39 Upon review, Petitioner's lack of CLE hours and the occasional paralegal work he provided to a few law firms in limited legal matters, is not sufficient to demonstrate his competency to practice law. Reinstatement requires stronger proof of qualifications than is necessary for one seeking admission for the first time. See Rule 11.4, RGDP; see e.g., Rickey, 2019 OK 36In re Reinstatement of Hardin, 1996 OK 115927 P.2d 545In re Reinstatement of Turner, 1999 OK 72990 P.2d 861

C. Unauthorized Practice of Law

¶40 Rule 11.1, RGDP, provides a mechanism for determining whether a petitioner has engaged in the unauthorized practice of law. Paragraph (a) of the Rule requires the Petitioner to submit an affidavit, attached to the petition for reinstatement, from each court clerk of the several counties in which the petitioner resided after suspension or termination of the right to practice law, establishing that the petitioner has not practiced law in their respective courts during that period. See Rule 11.1(a), RGDP; see e.g., Rickey, 2019 OK 36

¶41 Oddly, Petitioner initially failed to supply the required affidavit attesting that he had not engaged in the unauthorized practice of law since his resignation pending disciplinary proceedings was accepted by this Court on March 4, 2014. See Rule 11.1(a), RGDP. Failure to do so has been held to be a fatal defect in a reinstatement matter wherein the Court also addressed whether the petitioner had engaged in the unauthorized practice of law while disbarred. See In re Reinstatement of Katz, 1992 OK 161847 P.2d 1385 Bodnar, 2016 OK 12Katz is that the affidavits required by Rule 11.1(a) of the ORGDP are necessary to meet the burden of showing that an applicant has not engaged in the unauthorized practice of law.").

¶42 By initially failing to include the required court clerk affidavits with his Petition for Reinstatement, Petitioner not only failed to follow the mandatory rules necessary for reinstatement, but Petitioner also failed to show that he has not engaged in the unauthorized practice of law since his resignation pending disciplinary proceedings.

¶43 In order for Petitioner's reinstatement petition to be decided on the merits of Petitioner's fitness, the OBA agreed to allow Petitioner to provide the missing affidavits prior to the close of the record. However, the record reflects that despite being specifically advised that his Petition for Reinstatement was also lacking an affidavit from Petitioner attesting he had not engaged in the unauthorized practice of law, Petitioner failed to provide such a sworn statement.

¶44 Although the PRT did receive an affidavit from the Oklahoma County Court Clerk stating that he received no response from any Oklahoma County Judge regarding whether Petitioner practiced law in Oklahoma County from March 1, 2014 to August 11, 2020, such evidence fails to prove that Petitioner did not engage in the unauthorized practice of law. As the PRT pointed out, even when Petitioner was instructed to comply with this oversight at the reinstatement hearing, he failed to submit the required Rule 11.1, RGDP, affidavit(s).

¶45 The OBA, for its part in the attorney reinstatement process, also investigates the petitioner's activities for the unauthorized practice of law prior to the petitioner's reinstatement hearing in accordance with Rule 11.2, RGDP. The OBA conducted an investigation in regards to Petitioner, and OBA Investigator Kurt Stoner presented evidence before the PRT at Petitioner's reinstatement hearing. Of special concern in this case is the testimony received at Petitioner's reinstatement hearing concerning Petitioner's unauthorized practice of law by his own clients and colleagues after his resignation pending disciplinary proceedings on March 4, 2014. The record shows that Petitioner held himself out as an attorney on at least two occasions after his name was stricken from the roll of attorneys.

1. Robert Massion Testimony

¶46 First, on April 29, 2015, the OBA received a grievance from Mr. Robert Massion that Petitioner held himself out as an attorney in the late summer or early fall of 2014 and that Mr. Massion paid Petitioner a $3,500.00 retainer in September of 2014 to handle a divorce.

¶47 Mr. Massion's grievance included a sworn affidavit by attorney Tim Synar disputing he [Mr. Synar] had provided legal services for Mr. Massion or charged Petitioner for any legal services on Massion's behalf. Mr. Massion also included a copy of a Verified Complaint filed February 19, 2015 in John Phillips v. Joel Scott and JMAT Recovery Services, Oklahoma County, Case No. CJ-2015-1027, wherein Petitioner was sued for breach of contract and fraud for holding himself out as an attorney after he had resigned pending disciplinary proceedings in OBA v. Scott, 2014 OK 13322 P.3d 456

¶48 Mr. Massion testified at the reinstatement hearing about his lawsuit against Petitioner for fraudulently holding himself out as an attorney and charging attorney's fees after he was effectively disbarred. Mr. Massion testified that he was unable to afford to continue the litigation against Petitioner and that the lawsuit was dismissed with prejudice.

2. John Phillips Testimony

¶49 Next, Mr. John Phillips testified at the reinstatement hearing that he found Petitioner's name and telephone number during a Google search for recovering assets on a registered foreign judgment in excess of $1,246,412.92. Mr. Phillips testified he met with Petitioner in August of 2014 and that Petitioner told him he was an attorney. Phillips and Petitioner entered into a written contract and on October 8, 2014, a Writ of Execution was filed on Phillips' behalf purportedly signed by Attorney Tim Synar. A handwritten note on the signature pages states, "Joel Scott has been advised need a new Writ of Execution." The Writ of Execution has no Certificate of Delivery.

¶50 On October 10, 2014, another Writ of Execution was filed in the case purportedly signed by Attorney Andrew Koester. The signature block, however, contained the address, email, telephone, and fax numbers belonging to Petitioner. Attorney Koester, who is now an assistant district attorney in Oklahoma County, testified at the reinstatement hearing that he never represented Mr. Phillips and that he never authorized Petitioner to use his electronic signature on any pleadings in Mr. Phillips's legal matter.

¶51 Mr. Phillips testified before the PRT that he has never met or hired Mr. Koester to perform any legal services on his behalf. Mr. Phillips also testified that after Petitioner began the process of seizing assets, he simply stopped communicating. As a result, this caused Mr. Phillips to travel to Oklahoma City and go to Petitioner's office, where he found it was closed for non-payment of rent. Thereafter, Mr. Phillips sued Petitioner for fraud, breach of contract, and damages he sustained. Mr. Phillips testified that the case was ultimately dismissed because Mr. Phillips's attorney was never able to obtain service on Petitioner. Mr. Phillips also testified that he contacted Petitioner approximately a year ago at the JMAT Recovery Services' telephone number and stated he saw a deal where Petitioner got his license reinstated. Petitioner asked Phillips if he would give him a second chance and said he would speak with his people at the firm and get back with Phillips. Mr. Phillips never heard from Petitioner again and during that phone conversation, Petitioner did not advise Mr. Phillips that he had not been reinstated. Mr. Phillips testified that Petitioner has never apologized to him or made restitution.

¶52 The evidence of Petitioner's unauthorized practice of law after resignation pending disciplinary proceedings is damning in and of itself. See Munson, 2010 OK 27

D. The Kamins Factors

¶53 The Court is troubled by Petitioner's conduct following his resignation. The Petitioner was allowed by this Court to resign pending numerous disciplinary complaints. In order to return to the profession, the Petitioner needs to establish his rehabilitation to the satisfaction of this Court, and prove his ability to be trustworthy in his dealings with clients and the legal community.

¶54 In this regard, and in addition to the specific requirements set forth in Rule 11.4 and 11.5, RGDP, this Court has also held that the following factors should be considered in reinstatement proceedings:

(1) the present moral fitness of the petitioner, (2) the demonstrated consciousness of the wrongful conduct and disrepute which the conduct has brought the profession, (3) the extent of petitioner's rehabilitation, (4) seriousness of the original misconduct, (5) conduct subsequent to discipline and (6) the time which has elapsed since the original discipline. . . .

Kamins, 1988 OK 32

¶55 Moreover, Petitioner's conduct subsequent to his discipline evidences a continued pattern of engaging in continued misrepresentations, omissions, and actions that are not indicative of rehabilitation. Instead, his actions mirror his past behavior and misconduct prior to resignation pending disciplinary proceedings. In Kamins, we held that it is this Court's "duty to review the evidence in relation to these factors and to make a determination based on the Court's primary duty of safeguarding the interests of the public, the courts and the legal profession." Kamins, 1988 OK 32

balances the interest of the applicant against the fact that the very nature of the profession places an attorney in a position where an unprincipled person may do tremendous harm to the public and to his clients. It is because of the great potential for harm that the burden on one seeking reinstatement is so great. Where one has shown disregard for the interests which this Court must uphold, so as to necessitate disciplinary proceedings in the first instance, his showing on each of the factors to be considered on reinstatement indeed must be, as stated in Rule 11.4, clear and convincing.

Id. (emphasis original).

¶56 In this case, Petitioner's reinstatement to the practice of law would serve neither the public nor the legal profession's best interests. Given the magnitude of the harm Petitioner caused to dozens of people, including the fifteen who testified in opposition to his reinstatement, the record in this case overwhelmingly demonstrates that Petitioner's Petition for Reinstatement should be denied and we hold that the Kamins factors support such denial.

E. Rule-Mandated Requirements for Reinstatement 

¶57 On March 27, 2014, Scott filed an affidavit pursuant to Rule 9.1, RGDP, averring under oath that he had withdrawn from all pending cases and had notified all of his clients of his inability to represent them. However, at least one of his clients, Christy Minnis, testified at the PRT hearing that Respondent never withdrew from her case and that to her knowledge, her legal matter was still pending. Ms. Minnis's testimony is supported by Petitioner's own Rule 9.1, RGDP affidavit, which does not show that she was ever provided notice of Petitioner's resignation, as well as a docket sheet from her case which shows Petitioner failed to file a motion to withdraw, and was never granted leave to withdraw in that matter. This is yet another example of Petitioner's lack of competency to practice law and for Petitioner's Petition for Reinstatement to be denied.

¶58 On November 30, 2021, the OBA filed its Amended Application to Assess Costs against Petitioner pursuant to Rule 11.1(c), RGDP. The Amended Application to Assess Costs was supported by an affidavit submitted by Loraine Dillinder Farabow, First Assistant General Counsel for the Oklahoma Bar Association. The Amended Application and affidavit allege that the OBA is entitled to be reimbursed in the amount of $303.19 for expenditures incurred in the investigation and processing of Petitioner's application for reinstatement. We hold Petitioner is ordered to pay the OBA $303.19 in costs.

IV. CONCLUSION

¶59 It is the Court's duty to safeguard the public by ensuring that applicants for reinstatement meet the qualifications for the practice of law. See In re Reinstatement of Thompson, 1993 OK 152864 P.2d 823

REINSTATEMENT DENIED; PETITIONER ORDERED TO PAY COSTS.

ALL JUSTICES CONCUR.

FOOTNOTES

A person whose name has been stricken from the Roll of Attorneys for non-payment of dues, or who has been suspended from the practice of law for a period of longer than two (2) years or disbarred, or who has resigned membership in the Association, may be readmitted to the practice of law only through the following procedures:

(a) The applicant shall file an original and ten copies of a petition for reinstatement with the Clerk of the Supreme Court, and attach thereto (1) an affidavit showing all of the applicant's activities since the termination or suspension of his right to practice law and the applicant's place or places of residence since that date; and (2) the applicant's affidavit and the affidavits of the court clerks in the several counties in which he has resided, establishing that the applicant has not practiced law in their respective courts since the termination or suspension of his right to practice law. The applicant shall concurrently furnish a copy of said petition and all other documents filed with the Clerk of the Supreme Court to the General Counsel of the Oklahoma Bar Association.

(b) If any funds of the Client's Security Fund of the Oklahoma Bar Association have been expended on behalf of the applicant, the applicant must show the amount paid and that the same has been repaid to the Oklahoma Bar Association to reimburse such Fund.

(c) The applicant shall pay a fee to cover the expenses of investigating and processing the application as determined by the Professional Responsibility Tribunal. In addition, the applicant shall pay the cost of the original and one copy of the transcript of any hearings held in connection with the application.

(d) The applicant shall, if required by the Professional Responsibility Tribunal, procure at the applicant's expense and cause to be filed any report required by the Professional Responsibility Tribunal of the applicant's activities during any time after termination or suspension that the applicant has resided outside the state.

(e) The applicant shall not be permitted to file an application for reinstatement, after disbarment or resignation pending investigation or disciplinary proceedings, within five (5) years of the effective date of the order of the Court disbarring the applicant or accepting the resignation . . .

A lawyer who is the subject of an investigation into, or a pending proceeding involving, allegations of misconduct may resign membership in the Oklahoma Bar Association, and thereby relinquish the right to practice law, only by delivering to the Commission an affidavit stating that the lawyer desires to resign and that:

(a) The resignation is freely and voluntarily rendered, the lawyer is not being subjected to coercion or duress, and the lawyer is fully aware of the consequences of submitting the resignation;

(b) The lawyer is aware that there is presently pending an investigation into, or proceedings involving, allegations that there exist grounds for discipline, specifying particularly the misconduct alleged;

(c) The lawyer agrees that he may be reinstated only upon full compliance with the conditions and procedures prescribed by these Rules, and no application for reinstatement may be filed prior to the lapse of five years from the effective date of the resignation.

See In re Reinstatement of Kamins, 1988 OK 32752 P.2d 1125

Upon receipt of the required affidavit, the Commission shall file it with the Clerk of the Supreme Court and the Supreme Court may enter an order approving the resignation pending disciplinary proceedings. A lawyer who so resigns shall only be permitted to apply for reinstatement after the lapse of five (5) years and under the provisions of Rule 11.

At the conclusion of the hearing held on the petition for reinstatement, the Trial Panel of the Professional Responsibility Tribunal shall file a report with the Supreme Court, together with the transcript of the hearing. Said report shall contain specific findings upon each of the following:

(a) Whether or not the applicant possesses the good moral character which would entitle him to be admitted to the Oklahoma Bar Association;

(b) Whether or not the applicant has engaged in any unauthorized practice of law during the period of suspension, disbarment or resignation;

(c) Whether or not the applicant possesses the competency and learning in the law required for admission to practice law in the State of Oklahoma, except that any applicant whose membership in the Association has been suspended or terminated for a period of five (5) years or longer, or who has been disbarred, shall be required to take and successfully pass the regular examination given by the Board of Bar Examiners of the Oklahoma Bar Association. Provided, however, before the applicant shall be required to take and pass the bar examination, he shall have a reasonable opportunity to show by clear and convincing evidence that, notwithstanding his long absence from the practice of law, he has continued to study and thus has kept himself informed as to current developments in the law sufficient to maintain his competency. If the Trial Panel finds that such evidence is insufficient to establish the applicant's competency and learning in the law, it must require the applicant to take and pass the regular bar examination before a finding as to his qualifications shall be made in his favor.

After the filing of the Trial Panel's report, together with the petition for reinstatement, the transcript of the hearing and all exhibits offered thereat [sic], with the Supreme Court, the Court may request that briefs be filed. Thereafter, the Court will take such action as it deems appropriate on the petition, based upon the record and the Trial Panel's report, or if it deems that the ends of justice require, the Court may remand the matter to the Professional Responsibility Tribunal for additional proceedings.

closed record via affidavits, which were all obtained after the reinstatement hearing concluded based on no showing whatsoever that the information contained in the affidavits contained new or newly discovered information.

An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules.